MRS. MABEL L. MAURER et al., Proponents, Appellants, v. ALMA E. JOHANSSON et al., Objectors, Appellees, RUTH RYDBERG, Administratrix, Appellee.

No. 43694.

JUNE 15, 1937.

REHEARING DENIED SEPTEMBER 24, 1937.

Grimm, Elliott, Shuttleworth & Ingersoll, for appellants.

Otto L. Schluter, Rufus B. Culver, C. W. Meek, W. L. Crissman, and A. C. R. Swenson, for appellees.

STIGER, J.—John and Mary Harcourt were married in December 1909. On March 12, 1910, they each made a will naming the other as sole beneficiary. The wills are identical in all respects. On the same date, March 12, 1910, they went to the office of Minnie Fletcher Blasier with their unsigned wills, stating that they were making the wills for each other and that each was to be the beneficiary of the other and wanted their wills witnessed. Both wills were then duly executed, Mrs. Blasier and Dr. Agnes I. Safley signing as witnesses.

Mary Harcourt died in January 1933, her will was ad-

mitted to probate, and the estate was closed in 1934. John M. Harcourt died in July 1935. No children were born to Mr. and Mrs. Harcourt.

The proponents of the will of Mr. Harcourt are the heirs-at-law of Mary Harcourt. The heirs-at-law of John M. Harcourt filed objections to the probate of his will alleging:

"That prior to March 12, 1910, John M. Harcourt and Mary Harcourt, husband and wife, entered into an oral agreement to make reciprocal and mutual wills, each making the other sole beneficiary and agreed that whichever survived should inherit the property of the one first becoming deceased, and that the last will of the survivor should thereupon become null and void.

"That pursuant to said oral agreement John M. Harcourt and Mary Harcourt did on March 12, 1910, at the same time and place and by the same scrivener and pursuant to a common purpose and understanding and plan, make his and her will identical in its provisions and terms each having knowledge of the other's will, and each making the other sole beneficiary with the intention that said last will should operate as mutual wills and that the will of the survivor should become void upon the death of either.

"That said John M. Harcourt and Mary Harcourt appeared together before the same two persons and together requested their attestation to both wills and each of said wills were thereupon at the same time, place and by the same persons witnessed.

"That the making of said last wills and testaments constituted one transaction and pursuant to a common plan of the said John M. Harcourt and Mary Harcourt.

"That the said Mary Harcourt became deceased on the 2nd day of January, 1933, and her last will was admitted to probate in the District Court of Iowa in and for Linn County on the 10th. day of January, 1933, being Probate No. 12438, reference to which is hereby made.

"That on the death of the said Mary Harcourt and the probating of her will as aforesaid, the purported will of John M. Harcourt became void and of no legal force and effect and should not now be admitted to probate.

"That for the reasons stated, this objector objects to, and contests the admitting to probate, and the probating of, the purported will of the said John M. Harcourt."

The wills of the testators were introduced in evidence and the objectors introduced the following oral evidence to sustain their contention that the wills were executed in pursuance of a common understanding and purpose and were mutual wills.

Dr. Agnes I. Safley, one of the witnesses to the wills, testified that when she was called to the office of Mrs. Blasier, Mr. and Mrs. Harcourt were there and stated, "here are our wills. We want you to sign both of them." The witness further testified that they said they were making the wills for each other— as a benefit to each other. Mrs. Blasier, another witness to the wills, testified that Mr. and Mrs. Harcourt came into her office on March 12, 1910, together and asked her and Dr. Safley to witness their wills, which they had with them. Mr. Harcourt said that Mrs. Harcourt was the beneficiary in his will and Mrs. Harcourt said that Mr. Harcourt was the beneficiary in her will.

Ruth Rydberg testified that she had become engaged to John M. Harcourt and was engaged to him during the year of 1935 up to the time of his death and that Mr. Harcourt had deeded to her certain property which she had agreed with him she would deed back to him at any time and that prior to his death she had deeded it back to Mr. Harcourt. The deed to Ruth Rydberg included some of the property received by John M. Harcourt under the will of his wife, Mary Harcourt.

The evidence offered by proponents will be referred to later in the opinion.

At the close of all the evidence the proponents and objectors filed motions for a directed verdict. The motion of proponents was overruled. The motion of the objectors was sustained and judgment entered denying the admission of the will of John M. Harcourt to probate. Proponents appealed.

Appellants contend that the wills are reciprocal only, not executed in pursuance of any contract or compact and therefore constitute only the individual will of each testator and deny that they are mutual wills.

■■■ Mutual wills are those which are executed pursuant to an agreement or compact between two or more persons to dispose of their property in a particular manner, each in consideration of the other. Such wills, if they contain no provisions for third persons, constitute a single will and is the will of the first to die, and has no further existence as the will of the survivor. 69 C. J., 1297; 28 R. C. L. 167, Sec. 122; Anderson v. Anderson,

181 Iowa 578, 164 N. W. 1042; Campbell v. Dunkelberger, 172 Iowa 385, 153 N. W. 56.

■■■ They may be in separate instruments or in the same instrument. In some of our cases the term mutual will has been used interchangeably with the term reciprocal will. Either party, while both are living, may revoke the will by giving notice of the revocation to the other. Campbell v. Dunkelberger, supra.

■■■ Appellants' first proposition that the objectors had the burden of establishing by clear and satisfactory evidence on the face of the wills or aliunde the wills that they were executed in pursuance of a compact between the testators is correct. Campbell v. Dunkelberger, supra. Appellants also urge that the fact that the wills were drawn by the same scrivener, and executed by the same parties, at the same time and place, as one transaction, before the same witnesses, each in favor of the other, is not sufficient to prove the wills were mutual and executed pursuant to a common understanding; that there were no recitals in the wills indicating an agreement for mutual wills and in the absence of such recitals that the wills did not constitute any evidence of the compact and mutual arrangement; that the objectors failed to offer any evidence, oral or otherwise aliunde the wills to sustain their contention that the wills were mutual, and that the evidence fails to establish any contract or agreement between John M. Harcourt and Mary Harcourt for a mutual will and that the court erred in failing to sustain proponents' motion for a directed verdict. In support of this contention, appellants cite: Wagnon v. Wagnon (Tex. Civ. App. 1929), 16 S. W. (2d) 366; Clements v. Jones (1928), 166 Ga. 738, 144 S. E. 319; Flower v. Flower (1928), 32 Ohio App. 350, 166 N. E. 914; Dicks v. Cassels, 100 S. C. 341, 84 S. E. 878; Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265; Beveridge v. Bailey, 53 S. D. 382, 220 N. W. 868, 60 A. L. R. 619; Frazier v. Patterson, 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas. 1003; Wanger v. Marr, 257 Mo. 482, 165 S. W. 1027; Mosloski v. Gamble, 191 Minn. 170, 253 N. W. 378, and other cases.

The above cases of Wagnon v. Wagnon and Clements v. Jones sustain appellants' contention that wills executed at the same time as one transaction containing reciprocal provisions, each testator having knowledge of the other's will, do not of themselves constitute evidence of a mutual arrangement and, in

order to establish the prior agreement, the wills must contain a recital of a compact for mutual wills or clear and satisfactory evidence of the contract aliunde the wills be produced.

Some of the cases cited do not require the quantum of proof claimed by appellants to be necessary to establish the prior contract. See Frazier v. Patterson, 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas. 1003, supra.

There is a conflict in the decisions of the courts, the different results reached being due to the wide variance in the quantum of evidence held necessary to establish the prior compact for mutual wills.

An analysis of the cases in other jurisdictions is not necessary because this question, that is, the quantum of evidence necessary to establish the prior contract, has been determined by our decisions against the rule contended for by appellants.

. It is unnecessary, under our decisions, that the wills contain a memorandum of an agreement for mutual wills or that their language show the instruments are a result of a compact, and in the absence of such written evidence, that the contract be established by direct oral evidence.

If, as in this case, the wills of the husband and wife, each acting with the knowledge of the other, are drawn at substantially the same time, at their joint request, and contain reciprocal provisions, such wills and circumstances are sufficient to establish the prior contract to make mutual wills. Anderson v. Anderson, 181 Iowa 578, 164 N. W. 1042; Campbell v. Dunkelberger, 172 Iowa 385, 153 N. W. 56; Baker v. Syfritt, 147 Iowa 49, 125 N. W. 998; Murphy v. Black, 44 Iowa 176; Chambers v. Porter (Iowa), 183 N. W. 431; Wilson v. Starbuck, 116 W. Va. 554, 182 S. E. 539, 102 A. L. R. 485; see, also, Harris v. Morgan, 157 Tenn. 140, 7 S. W. (2d) 53; McGinley's Estate, 257 Pa. 478, 101 Atl. 807.

Mr. and Mrs. Harcourt each knew the contents of the other's will, the wills were executed at the same time at their joint request, and contained identical reciprocal provisions.

The wills and circumstances constituted sufficient evidence that the wills were executed in pursuance of a common understanding and agreement to make mutual wills and the trial court was right in overruling proponents'—appellants'—motion for a directed verdict.

II. The trial court sustained the motion of the objec-

tors for a directed verdict and entered judgment denying the will of John M. Harcourt to probate.

Appellants contend that, conceding the wills and circumstances under which they were executed were sufficient evidence of a prior contract, the court erred in directing a verdict for the objectors because the evidence offered by proponents made a question for the jury.

Mrs. Blasier, one of the witnesses to the will, testified for the proponents that she had two conversations with Mr. Harcourt in reference to his affairs after the death of Mrs. Harcourt. The first of these conversations was in April, 1935. The witness asked Mr. Harcourt if he still had the will that Dr. Safley and the witness had witnessed for him, and Mr. Harcourt replied, "Yes, I have."

The second conversation took place in June, 1935, in the home of Mrs. Blasier in the presence of Ruth Rydberg and another person. The witness said to Mr. Harcourt, "Jack, do you have your house in order?" and Mr. Harcourt replied, "Yes". Ruth Rydberg then said, "What does she mean, Jack? Does she mean your house on Bever Avenue?" He said, "No, she means my will."

The objectors moved to strike the second conversation as incompetent, irrelevant and immaterial, which motion was sustained by the court. The statements attributed to Mr. Harcourt, if competent, are indefinite, obscure and susceptible to several interpretations. Because of the speculative and conjectural nature of the evidence, there was no error in sustaining the motion to strike.

The trial court was right in holding that the wills were mutual wills and in directing a verdict for objectors.

 Another error urged is that the court erred in not directing a verdict for the proponents because the objectors failed to show that the will of John M. Harcourt had been revoked in any manner known to the law. Code, section 11855, reads as follows:

"Revocation—cancellation. Wills can only be revoked in whole or in part by being canceled or destroyed by the act or direction of the testator, with the intention of so revoking them, or by the execution of subsequent wills. When done by cancellation, the revocation must be witnessed in the same manner as the making of a new will."

Appellants further claim that the Iowa anti-lapse statute 11861 operates to raise the presumption that the testator intends his bequest to go to the heirs of the devisee in case the devisee predeceases him, unless a contrary intent is shown in the will.

The answer to these propositions is that neither of the above sections of the code is applicable here because if the wills are mutual, they constitute only the will of Mary Harcourt and had no existence after her death as the will of John M. Harcourt. It follows that Mr. Harcourt would not have a will to revoke and there was no will under which Mrs. Harcourt's heirs could take under the anti-lapse statute.

As stated in Anderson v. Anderson, 181 Iowa 578, 587, 164 N. W. 1042, 1045:

"He did not survive her, and the will she had made in his favor, conditioned upon his outliving her, can never be made effective for any purpose at the demand of his heirs. This is the logical and necessary result of the most recent holdings of this branch of the law of wills."

Mutual wills may be revoked only while both testators are living. Anderson v. Anderson; Campbell v. Dunkelberger, supra.

As heretofore stated, the trial court was right in refusing to direct a verdict for the proponents.—Affirmed.

RICHARDS, C. J., and ANDERSON, HAMILTON, DONEGAN, PARSONS, MITCHELL, and SAGER, JJ., concur.