CHRISSIE CHILD et al., Appellees, v. CHARLES C. SMITH et al., Appellants.

No. 44483.

November 15, 1938.

Rehearing Denied March 17, 1939.

Davis, McLaughlin & Hise, for appellants.

Havner, Flick & Powers, for appellees.

HAMILTON, J.—Elizabeth Wood and William Wood, wife and husband, were childless. On November 11, 1935, they executed separate wills containing reciprocal provisions in favor of each other and certain named beneficiaries, the latter being the plaintiffs in this action.

The following is the will of Elizabeth Wood:

"KNOW ALL MEN BY THESE PRESENTS:

"That I, Elizabeth Wood, of the City of Des Moines, County of Polk, State of Iowa, being of legal age, sound mind, and disposing memory, do hereby make, constitute, publish and declare this to be my last will and testament, hereby revoking any and all former wills and testaments and codicils thereto that have been at any time heretofore made.

"I. It is my will and I hereby direct that my just debts including those incident to my last sickness and burial be first paid.

"II. I give, devise and bequeath to my beloved husband, William, all of the property, both real and personal, and of every kind and character whatsoever and wherever situated, which I own or to which I may be entitled at the time of my death, it being my intent and purpose and will that my said husband shall take said property and all of it absolutely and without restriction or qualification.

"III. Should I survive my husband, William, then and in that event it is my will that all my property, both real and personal and of every kind and character whatsoever be disposed of as follows:

"(a) If the real property now owned by us and locally known as 1326 West 10th Street in the City of Des Moines, Iowa, and more particularly described as Lot Eleven (11) of Nash's Sub-Division of Lot Twenty-two (22), Official Plat Lot Seventeen (17) Sec. 34-79-24, Polk County, Iowa, has not been sold or otherwise disposed of during my lifetime, I give, devise and bequeath said property to the Forest Avenue Baptist Church and/or the Trustees of said Church and their successors in office, to be used by said Church as a parsonage or for whatever purpose the Church may desire or find advantageous to its use and purpose.

"If said property has been sold or disposed of and I still own the property where we now live and known as 1330 West

10th Street, in the City of Des Moines, Iowa, and more particularly described as Lot Ten (10) of Nash's Sub-Division of Lot Twenty-two (22), Official Plat Lot Seventeen (17), Sec. 34-79-24, Polk County, Iowa, then in that event I give, devise and bequeath said Lot Ten (10), together with the buildings and improvements thereon to said Forest Avenue Baptist Church and/or the Trustees of said Church and their successors in office, to be used by said Church and its Trustees as a parsonage or for such other purpose or purposes as said church may desire.

"(b) Subject to the above and to the payment of any and all costs, charges and expenses incident to the settling of my estate, I give, devise, and bequeath all the rest, residue and remainder of my property, both real and personal, to the following named persons to wit:

"My niece, Mrs. E. C. Kilbourne, 33 Struton Street, Nottingham, England, and Mrs. Chrissie Child and Miss Fannie Wood, 159 Church Lane, Charlton, London, England, and Mr. W. Wood, 133 Upper Wickham Lane, Welling, Kent, England, nieces and nephew respectively of my husband, William. Said property or the proceeds thereof to be divided equally among said parties after the payment of all required taxes.

"Should any of the above named persons not survive me then in that event the remainder of said property to be equally divided among the survivors of said named beneficiaries.

"My executor is hereby authorized and empowered without obtaining any order of court therefor, to sell any and all of said property and convert the same into cash for the purpose of making the distribution herein provided."

It appears from the testimony that the instruments in question were prepared by Frank H. Dewey, an attorney of Des Moines, Iowa, who had known Mr. and Mrs. Wood for 40 years and had, at one time, lived in their home. We quote from the testimony of Mr. Dewey, the following pertinent excerpt:

"Mr. Wood came to my office in the fall of 1935. * * * He said that he and Mrs. Wood wanted me to prepare a new will for them, and he said: 'You remember that you made a will for us quite a good many years ago'. I asked him what disposition he wanted to make, and whether he and Mrs. Wood had talked the matter over or not, and he said they had. He said

that the change was made necessary because some of the legatees named in the former will were dead, and that they had a few relatives living that they wanted to substitute in their wills for the ones previously named. I asked him for their names and addresses. He said they all lived in England, where Mr. and Mrs. Wood formerly lived and came from. He could not, at that time give me the names and addresses of those people. He knew the names, but he did not know their addresses. I asked him if he would get that information for me. He said he would, and left the office, and came back some days afterwards with a written memorandum which contained, so he said, the names and addresses of the legatees that he wanted to substitute for the ones in the prior will. Exhibit 2 is the memorandum. * * *''

### EXHIBIT 2.

''When we make a Will, we are saving our Rents, and depositing all our money in the Bank, and we are using both our names, such as William and Elizabeth Wood, and if either one of us was to pass away, the deposits would be in favor of the one who is left. In case, Elizabeth Wood was left, she would notify her Relatives. She would write to her niece, Mrs. E. C. Kilbourne, 30 Struton St. Nottingham, England, and to my Nieces, Mrs. Chrissie Child, and Miss Fannie Wood, 159 Church Lane, Charlton, London, England, and to my Nephew, Mr. W. Wood, 113 Upper Wickham Lane, Welling, Kent, Eng. She would notify them, that I was gone and she owned any property that was left. She would send them a small dividend at the time, and tell them what property was left. In case she went first, I would write to the same Relatives and tell them how I was provided for. We are hoping you (Mr. Frank Dewey) will make the will, and see that it is properly made, and see that it is passed Lawfully.

''We are expecting to sell the apartment house and we may sell one of the other two. We may give many articles to our Friends here and, if possible we may Buy a small Bungalow for ourselves.

''Is it Lawful for our Friends here to sign the will. We are thinking of Mr. and Mrs. Smith to sign each will.''

Continuing from Dewey's testimony:

''* * * Exhibit 2 is all in the handwriting of Mr. Wood * * *

"Q. Was there anything said when Mr. Wood was in there about a joint will? A. Yes.

"Q. Tell what was said; tell what, if anything, was said by Mr. Wood in the matter of a joint will. A. The first time Mr. Wood came he said that he and Mrs. Wood had talked the matter over and *they* wanted a *joint will.* I said, 'Why a joint will, Mr. Wood, for what purpose?' And he said, '*We* have decided how we want to dispose of our property and *we* want to make a *joint will.*' I said, 'I don't like a joint will proposition so much. Personally, I do not favor them, but I can give you what I think is the same result by two wills.' I did not use the words reciprocal will, but I tried to make it plain to him what I meant by it, that one will would be a counterpart of the other except as to the name. He did not take very kindly to that at first, and I wanted to know why, and I said, 'There is practically no difference except convenience in probating, as I see it.' 'Well,' he said, 'whatever you say is all right, and if you say make them separate wills, I will but', he said, 'we want them the same, we want certain disposition made of what is left after the survivor of us is gone.' "

We have italicized certain words in the foregoing narrative for the purpose of calling attention to the fact that, in all these conversations, the personal pronoun "I" is entirely missing. It is always "we", "us", "our", or "they", etc., plainly indicating this aged couple was acting in unison in carrying out a common purpose. In referring to a former will that Mr. Dewey had prepared for them, Mr. Wood said, "You remember that you made *a will* for *us* quite a good many years ago." Whether or not this was a joint will is not shown by the record. And in the several conversations similar expressions are made use of in making known to Mr. Dewey their wishes. They came to him for the express purpose of having this new will a "joint will", and were dissuaded by Mr. Dewey from making their will in this form and only yielded to his advice after being assured by him that the two mutual and reciprocal instruments would accomplish the same purpose and would be more convenient in probate procedure. Three separate drafts of these wills were made by Mr. Dewey before they were finally approved by Mr. and Mrs. Wood as executed. In the first draft the Baptist Church was not included as one of the legatees. The second draft

gave the church a certain described tract of real estate, which testators later decided to change necessitating the redrafting of the wills for the third and last time. Each time the wills were read over to Mr. and Mrs. Wood and they each read the wills and together agreed on the suggested changes and on the final draft. The matter of joint will was again talked over and the effect of these reciprocal wills explained to them in their own home by Mr. Dewey in the presence of both of them in which Dewey told them: "This has the same force and effect, and is in my opinion a little more easily handled in probate proceedings." And Mr. and Mrs. Wood agreed that it was "all right if you say so."

In addition to all this testimony the instruments themselves strongly indicate a previous understanding between these parties to make mutual and reciprocal disposition of their property. Mrs. Wood died first and her will was admitted to probate and William Wood manifested an intent to accept and did accept its provisions by collecting the rents and profits from the real estate and taking possession of the personal property, moneys and credits. Thereafter William Wood made a new will by the terms of which he undertook to dispose of all this property to the appellants, Charles Smith and Daisy Smith. This latter will has not been admitted to probate. At the instigation of the Smiths, Floyd E. Wright, one of the appellants, was made special administrator of the estate of William Wood. At this stage of the proceedings, the plaintiffs brought this action alleging the oral agreement or compact and setting up the facts surrounding the making of mutual and reciprocal wills and asking that specific performance be decreed and that the court find and determine that said William Wood was without lawful power or authority to make any other or different disposition of his property by will than that contained in the will executed pursuant to the mutual agreement; that the subsequent will of William Wood be declared void and fraudulent; that the court establish ownership in plaintiffs of the property described in the mutual will and for an order restraining the probating of the subsequent will; and that the court impress with a trust all of the property which had passed into the possession of Floyd E. Wright, special administrator, in favor of the plaintiffs, and for general equitable relief.

The answer traversed the allegations of the petition and

trial was had to the court resulting in a decree for plaintiffs in which decree the court found the equities were with the plaintiffs and made a general finding of facts which are set out in the decree. It is shown by the evidence, and the trial court so found, that on November 11, 1935, when these wills were executed, the parties owned the real estate described in the will. The tract locally known as 1326 West 10th Street was purchased July 9, 1890 and title taken in the name of William Wood. The 1330 West 10th Street tract was purchased August 10, 1889 and title taken in Wm. Wood and in addition thereto, on August 1, 1905, another lot described as Lot 22, Block 1, Harlan & Tubb's Replat, was purchased and title taken in name of Elizabeth Wood; that their several properties were acquired by them after their marriage and that, in addition thereto, they had, on November 11, 1935, certain personal property, shown in the record, a portion of which was held by Wm. Wood and a portion by Elizabeth Wood; that they had and maintained a joint banking account on which each drew checks and had a safety deposit box in which they kept their valuable papers and securities to which each had access. The court further found that a compact to make mutual and reciprocal wills had been established by the evidence and as a basis for the legal conclusions found:

"That after the death of Elizabeth Wood, she having kept and performed said agreement on her part, the said Wm. Wood, having accepted the benefits under her will, was without power to revoke the mutual, reciprocal will executed by him on November 11, 1935, under said agreement, and his attempt to do so by the execution of the alleged will of May 1, 1936, constituted in law and was a fraud upon the said Elizabeth Wood and upon the rights of the plaintiffs and was void and did not have the effect of revoking said mutual and reciprocal will dated November 11, 1935.

"That to permit the defendants to proceed with the probation of the alleged will of Wm. Wood executed on the 1st day of May, 1936, and which has been offered for probate by the defendants in the district court of Polk County, Iowa, would cast a cloud on the title to the real estate hereinbefore described and interfere with the use and enjoyment of the personal prop-

erty which belongs to the plaintiffs by reason of the joint and reciprocal wills * * *.''

The case was carefully presented and tried in the court below and ably and thoroughly presented and argued in this court. The arguments covering numerous propositions which we do not deem it necessary to discuss or pass upon in this opinion.

Briefly stated, appellants' theory is that the will of Elizabeth Wood, by paragraph II, devised an absolute estate to William Wood in plain and unambiguous language and that parol evidence, purporting to show that William Wood took what in legal effect amounted to a life estate, only, was inadmissible under the rule that parol evidence is never admissible to change or vary the terms of an unambiguous will and that, having in paragraph II devised an absolute estate, the provisions of paragraph III are void as an attempt to limit the disposition of the fee already granted.

■ We do not think this rule is applicable to the question presented, namely, the enforcement of the agreement or compact entered into, and other matters raised by the pleadings. We recently had this matter before us in two cases of reciprocal wills, namely, Maloney v. Rose, 224 Iowa 1071, 277 N. W. 572, and Maurer v. Johansson, 223 Iowa 1102, 274 N. W. 99, wherein the following rule concerning proof is laid down:

''If, as in this case, the wills of the husband and wife, each acting with the knowledge of the other, are drawn at substantially the same time, at their joint request, and contain reciprocal provisions, such wills and circumstances are sufficient to establish the prior contract to make mutual wills. * * *'' Citing list of Iowa cases, 223 Iowa 1107, 274 N. W. 102.

■ In the instant case, the proof goes much further in tending to establish the mutual compact. The same principle was announced in an earlier case, Anderson v. Anderson, 181 Iowa 578, 164 N. W. 1042, from which we quote the following [page 582 of 181 Iowa, page 1043 of 164 N. W.]:

''It may be conceded that extrinsic evidence is inadmissible to vary or change the terms of a will or to make another and different will for the testator, but this does not mean that evidence may not be admitted to show the circumstances which ac-

companied or attended the making of the instrument, or to identify the papers or writings which in fact constitute the will of the deceased. Lorieux v. Keller, 5 Iowa 196, 68 Am. Dec. 696; Huston v. Huston, 37 Iowa 668; Bradbury v. Jackson, (97 Me. 449), 54 Atl. 1068. And this is especially true where, as in the case at bar, it is claimed that two or more writings made at or about the same time are part of a single transaction, and together constitute in law a single will. In such case, resort may be had to all papers of a testamentary or contractual character which entered into the transaction, if any, out of which or in pursuance of which the will was made. See Murphy v. Black, 44 Iowa 176. The cited case is quite in point, both in its facts and in the rule of evidence there applied. Under that rule, it was entirely competent in the present case for the appellees to show, if they could, the execution of both wills, and the circumstances, if any, tending to show their mutual or contractual nature. That such testimony tends not to destroy the will of the deceased or to change or vary its terms, but rather to designate and identify the entire instrument, is obvious. * * *

"In a joint or mutual will for the benefit of the survivor, there is an element which partakes of the nature of contractual obligation. It is one, however, from which either of the parties may recede by a revocation made with notice in the lifetime of the other; but if there be no revocation before the death of one of the parties, *the right of the survivor is thereby fixed and determined according to the terms of the mutual will.*" (Italics ours.)

And where, as in the instant case, provision is made for third parties, the rights of such third parties are equally thereby fixed and determined according to the terms of the mutual will. Proof aliunde the wills was admissible as bearing on the question of whether an agreement or compact had been made and such evidence together with the instruments taken into consideration by the court in passing on the question of whether there was in fact a contract between these parties. Another case squarely in point is Campbell v. Dunkelberger, 172 Iowa 385, 153 N. W. 56. In this cited case the terms and provisions of the mutual and reciprocal will were all contained in a joint instrument but, aside from this one fact which we do not deem of controlling materiality, the character of the disposition made

of the property of two joint makers is very similar to that in the wills before us. We have held that the fact that there are two instruments instead of one does not change the legal aspect of the situation if the evidence is clear and satisfactory that the intent was to have the instrument speak as mutual and reciprocal wills. In the last cited case, we said [page 389 of 172 Iowa, page 58 of 153 N. W.]:

"* * * Mutual wills—that is, where two persons execute wills reciprocal in their provisions, either in separate instruments or in the same instrument,—may or may not be revoked at the pleasure of either party, according to the circumstances and understanding upon which they have been executed. In order that either party be denied the right to revoke such wills, it must appear by clear and satisfactory evidence or on the face of the wills that these were executed in pursuance of a contract or compact between the parties, each in consideration of the other; but even then either party may revoke during the lifetime of both, provided the other have notice of the intention of the revocation. After the death of one of the parties, however, if the survivor takes advantage of or accepts the provisions made for the other, it would seem that the survivor may not dispose of his property otherwise than according to the terms of the will. These principles are well established by the authorities, especially those hereinafter cited. The important inquiry in this case, then, is whether there was any contract or compact between the husband and wife, testators, with reference to the disposition of the property under the will set out. Of course, two persons might make wills, each devising property to the other, and there be no necessary inference that such wills were the result of any agreement or understanding, for they might be executed without either knowing of the action of the other. But where the wills are in the same instrument and executed and signed by the parties, it is scarcely possible that this could happen without previous understanding or agreement between them. Each would probably know the disposition the other had made of his property, and this inference is especially strong where the parties are husband and wife and have a like interest in the welfare of the devisees."

The mutual compact in the foregoing case seems to rest entirely on the instrument as no reference is made to proof

aliunde and the question before the court, as stated in the opinion, was the same as in the instant case, namely, ''whether there was any contract or compact between the husband and wife.'' In the instant case, the proof aliunde is abundant that each of these parties did know the dispositions that each had in mind to make of all the property involved. It is true that in the second clause of the will the language is such as to vest an absolute fee simple title. It is, likewise, true that the first words in the next paragraph, which is a part of the will and must be construed along with all the other provisions to arrive at the intent, provides:

''Should I survive my husband, William, then and in that event it is my will that all my property, both real and personal and of every kind and character whatsoever be disposed of as follows: * * *''

And in consideration of Elizabeth Wood making and disposing of all her property as she does in this third paragraph, her husband, William Wood, used identically the same language in the third paragraph of his part of this mutual and reciprocal will stating:

''Should I survive my wife, Elizabeth, then and in that event it is my will that all my property, both real and personal and of every kind and character whatsoever be disposed of as follows: * * *''

Here follows disposition made to identically the same persons as is found in the wife's will which we have heretofore set out. In equity and good conscience, the husband should not be permitted, after the death of the wife and after he has taken advantage of the terms of her will made in his favor, to break this mutual compact and to disregard its solemn terms plainly indicated by the identical provisions contained in these two instruments which, under the evidence, was contained in the two instruments instead of one joint will, only for convenience in probating as was suggested by their legal advisor and old time friend, Attorney Frank H. Dewey. Paraphrasing what is said in the Campbell case, supra, the facts and circumstances shown in this case indicate as definitely and certainly as any evidence could that the husband and wife had a mutual understanding one with the other that they would execute wills

such as were made, and we are satisfied that it was done in pursuance of an agreement to dispose of their several properties in the manner indicated in the wills. The last cited case is also authority for the question of the right of a beneficiary to maintain an action to determine their rights and interests under the mutual wills and to enjoin the revocation of such wills containing provisions in their behalf.

Mutual wills are those made as the separate wills of two people which are reciprocal in provision. That such wills may be made and enforced in equity is well established in this state. In the case of Baker v. Syfritt, 147 Iowa 49, 55, 125 N. W. 998, 1001, we said:

"* * * It has often been held that an agreement upon sufficient consideration to make a will is valid, and that upon breach of such promise the beneficiary thereof has a right of action for damages, or, under some circumstances, may enforce specific performance. And the person coming into the possession of such property otherwise than as an innocent purchaser is held in equity to be trustee thereof for him to whom it ought of right to have been devised. Brandes v. Brandes, 129 Iowa 351, 105 N. W. 499; Mueller v. Batcheler, 131 Iowa 650, 109 N. W. 186; In re Strang's Estate, 131 Iowa [583] 596, 106 N. W. 631; Bird v. Jacobs, 113 Iowa 194, 84 N. W. 1062. It appears therefore that, although a will is not a contract, yet the terms and benefits of a will may be the subject of contract, and the rights thus lawfully accruing will be protected at law or in equity according to the circumstances of the particular case. * * * where two persons competent to make testamentary disposition of property enter into a compact or agreement by which they unite in devising their joint or several estates to a designated third person, subject to a life estate in the survivor, and upon the death of the one the survivor avails himself of the benefits of the devise in his favor, he must in equity be treated as holding the title in trust for the purpose indicated in the compact which became irrevocable upon the death of the other party thereto."

The Supreme Court of Oregon, in the case of Stevens v. Myers, 91 Or. 114, 177 Pac. 37, 2 A. L. R. 1155, in considering two mutual and reciprocal wills very similar to the wills of Mr. and Mrs. Wood, reviewed all the authorities including our own

cases, by a divided court, reached the conclusion that a mutual compact had been entered into and in deciding the case said:

"After again reading the testimony, carefully studying and examining the respective wills and re-reading all of the authorities, and upon a further consideration of all of the surrounding facts and circumstances which obtained at the time the wills were executed, we are of the opinion that the wills in question were executed pursuant to an agreement and understanding between the deceased George T. Myers and Sally S. Myers; that there was a valid and mutual consideration for such agreement; and that in equity and good conscience the agreement should be enforced. This does not conflict with the right of any individual to dispose of his own property, by will or otherwise, in his own discretion; but we do hold that where for a good consideration two persons enter into an agreement to execute mutual wills and do execute such wills pursuant to such agreement, and one of them dies while both of such wills are in force and effect, the survivor probating the will of the deceased and accepting property under it, and where the agreement is valid and reasonable and such facts are established by competent evidence, a court of equity will then enforce the specific performance of such agreement on behalf of a third person who is a beneficiary under such mutual wills. In this case we hold that there is sufficient evidence of such an agreement and of a valid consideration between George T. Myers and Sally S. Myers at the time of the execution of their respective wills; that, after George T. Myers acquired his wife's property by a mutual will under a contract, equity will not permit him to keep the property and revoke the contract; that the plaintiff, as a beneficiary under clause 3 of their mutual wills, is entitled to a specific performance of that agreement; * * *"

Whether the facts and circumstances touching the question of the compact were sufficient, in the Oregon case, to justify the legal conclusions we need not say, however, the reasoning of the court in the excerpt from the opinion is sound and in accordance with the views of our own court.

Other matters presented by the briefs have been carefully considered but what we have said is decisive of the case and there is no merit in appellants' contention that the agreement was subsequently revoked nor in their contention that the evi-

dence or proof of a mutual compact or contract is not clear and satisfactory.

We are abidingly satisfied the trial court rightly decided the issues presented in the case now before us, and the decree entered should be and is accordingly affirmed.—Affirmed.

SAGER, C. J., and STIGER, KINTZINGER, MILLER, DONEGAN, and ANDERSON, JJ., concur.