IN RE ESTATE OF GEORGE E. JOHNSON.

No. 46270.

JULY 27, 1943.

Allan S. Jackson, of Chicago, Illinois, Frank D. Riley, of Clarion, and D. M. Kelleher, of Fort Dodge, for appellants.

V. P. McManus, of Manson, and A. C. R. Swenson, of Omaha, Nebraska, for appellees.

OLIVER, J.—George E. Johnson and his sister Emma, both then unmarried, lived together in Manson, Iowa. Emma Johnson died in October 1932. In the summer of that year Mrs. Hilda Wahlstrom became housekeeper for the Johnsons. She continued in this service after the death of Emma Johnson. On January 14, 1933, George Johnson married Mrs. Wahlstrom in Chicago. Two days previously he became acquainted with the two sons of Mrs. Wahlstrom, appellant Thore Wahlstrom, twenty-six years of age, and appellant Axel Wahlstrom, twenty-three years of age, both of whom lived in Chicago.

Mr. and Mrs. Johnson returned to Manson January 15, 1933. January 17th they called upon a lawyer and instructed him to make a joint will which would leave the property of each to the survivor, and ultimately, upon the death of both, to Mrs. Johnson's two sons. They said, ''They had just figured this thing out how they wanted it * * * they had agreed in private how they wanted to deal with the property.'' George Johnson said ''they had gone into and agreed on how they were going to leave this property.'' They discussed their properties with the lawyer. Mrs. Johnson's only property was certain household goods, most of which had been brought to Manson from Chicago in a trunk. Mr. Johnson owned a 160-acre farm, about $13,000 in mortgages, and the home in Manson, then worth about $1,500. He had acquired his property by inheritance from his father and by deed from his sister. The lawyer immediately prepared the will. It was examined by and explained to the Johnsons, was executed by George Johnson and Hilda Johnson, was witnessed in due form, and was turned over to George Johnson.

The instrument is entitled, ''Joint Will and Testament of George E. Johnson and Hilda Theresia Johnson.'' It provides, in part:

"We * * * do. hereby publish and declare this to be our joint last Will and Testament * * *.

"Par. 1. It is our will and we hereby give, devise and bequeath all our property * * * of which we may die seized or possessed to be determined as follows:

"In the event that the said George E. Johnson shall die prior to the said Hilda Theresia Johnson, it is the will of the said George E. Johnson that all of his property * * * shall go to the said Hilda Theresia Johnson in fee simple.

"In the event that the said Hilda Theresia Johnson shall die prior to the said George E. Johnson, it is the will of the said Hilda Theresia Johnson that all of her property * * * shall go to the said George E. Johnson in fee simple.

"Par. 2. Upon the death of both of us, it is our will and the will of each of us and we do hereby upon the happening of said event as contemplated by this paragraph, give, devise and bequeath all our property * * * to the two sons of the said Hilda Theresia Johnson, share and share alike, namely: Tore Walstrom of Chicago, Illinois and Axel Henry Walstrom of Chicago, Illinois."

The Johnsons lived together in Manson until the death of Mrs. Johnson, June 26, 1938. There was no issue from the marriage. During this period improvements were made upon the home and certain household goods were purchased. Apparently their income consisted of the rent or earnings of the farm and interest upon the mortgages held by Mr. Johnson. Separate bank accounts were carried in Manson State Bank. The account of Mrs. Johnson was not large and the record indicates the funds deposited were furnished by Mr. Johnson.

Immediately after the death of Mrs. Johnson in June 1938, her two sons came to Manson from Chicago. One of them brought a check for $125 which his mother had drawn to him and sent him two days before her death. Mr. Johnson took $35 of this money and the sons took $90 which they used to purchase a marker for Mrs. Johnson's grave. This left only $1.50 in Mrs. Johnson's bank account. Mr. Johnson later drew this. The only remaining estate of Mrs. Johnson was personal effects and household goods valued by some witnesses at approximately

$50. The expenses of the burial of Mrs. Johnson, amounting to $350, and the expenses of her last illness, in a like amount, were paid by Mr. Johnson.

One of Mrs. Johnson's sons testified that after they returned to Chicago he discovered the joint will of Mr. and Mrs. Johnson in a bundle of photographs and papers which had been turned over to the sons by Mr. Johnson. The sons retained possession of the joint will. It was not offered for probate and no proceedings to probate the estate of Mrs. Johnson were instituted.

July 25, 1938, George Johnson executed another will in due form. That will provided his entire estate should pass to the survivors of eight cousins on his father's side, all of whom were residents of Sweden. George Johnson died March 13, 1941. March 15, 1941, Thore and Axel Wahlstrom offered the joint will for probate. March 17, 1941, the 1938 will of George Johnson was offered for probate in the same proceedings. The proponents of each will filed objections to the probate of the other. Thore and Axel Wahlstrom also pleaded the joint will was a contract which George Johnson was without power to revoke after the death of his wife. They prayed specific performance of said contract and that all the property be impressed with a trust for their benefit. Their right thereto was challenged and is the principal issue in the case.

George Johnson left an estate of approximately $30,000, consisting of the 160-acre farm, valued at $16,000, the house, then worth $2,500, household goods of an estimated value of $500, and about $11,000 in mortgages, bank deposits, etc. The mortgages, bank deposits and credits due him were somewhat less in amount than in 1933. There is no indication that any substantial debts were owed by him.

By stipulation all the issues were consolidated and the cause was tried as an action in equity. Judge Hutchison, before whom the trial was had, died shortly thereafter and the cause was submitted to Judge Snell upon the transcript.

The briefs of the parties cite the Iowa cases and various decisions of other courts involving joint and mutual wills, executed in most instances by a husband and wife. We quote

from an excellent general discussion of the Iowa cases (to that time) at pages 15 to 24, Iowa Bar Association section of vol. 24, Iowa L. Rev., November 1938:

"A joint will is a single testamentary instrument which contains the wills of two or more persons and is executed jointly by them. Mutual wills are those in which two or more testators make reciprocal provisions for each other. Mutual wills are also defined as those which are executed pursuant to an agreement between two or more persons to dispose of their property in a particular manner, each in consideration of the other. Mutual wills may be in one instrument or more than one; thus, a joint will may also be mutual. * * * Where the joint will or the separate wills are purely mutual in their terms, each testator bequeathing his entire estate to the survivor— and neither making any devise of the property owned by the survivor at his death, such wills are construed as a single instrument, and are regarded as the will of the first to die, and have no validity or force as the will of the survivor. * * * Where a joint will devises the entire estate, or a life estate, to the survivor, with the remainder to third persons, such will is ordinarily entitled to be probated upon the death of each of the testators."

As supporting the foregoing definitions and propositions, see Baker v. Syfritt, 147 Iowa 49, 125 N. W. 998; Campbell v. Dunkelberger, 172 Iowa 385, 153 N. W. 56; Child v. Smith, 225 Iowa 1205, 282 N. W. 316; Anderson v. Anderson, 181 Iowa 578, 164 N. W. 1042; and citations in said decisions. See, also, 4 Iowa L. Bull. 189; McCarty Iowa Probate, section 367; annotations in 43 A. L. R. 1020, 102 A. L. R. 491.

The instrument executed by George and Hilda Johnson in 1933 purports to be a joint and mutual will. Anderson v. Anderson, supra, at page 584 of 181 Iowa, page 1044 of 164 N. W., states:

"In a joint or mutual will for the benefit of the survivor, there is an element which partakes of the nature of contractual obligation. * * * if there be no revocation before the death of one of the parties, the right of the survivor is

thereby fixed and determined according to the terms of the mutual will.''

Child v. Smith, supra, at page 1214 of 225 Iowa, page 321 of 282 N. W., adds to the foregoing statement:

''And where, as in the instant case, provision is made for third parties, the rights of such third parties are equally thereby fixed and determined according to the terms of the mutual will.''

It is stated in Baker v. Syfritt, supra, at page 56 of 147 Iowa, page 1001 of 125 N. W.:

''It is sometimes said that a will is essentially ambulatory, and subject to revocation at the desire of testator at all times until rights thereunder have become vested by death; and, while this is true as a general proposition, it is equally true that, where the will has been made pursuant to a valid contract, the testator can not by the act of revocation escape the obligations of his contract, nor will his heirs take any advantage by such revocation.''

Our decisions agree that it is the contractual element which distinguishes mutual wills from other wills. Furthermore, it is the established rule in this state that the will (or wills) itself may be sufficient to establish the prior agreement to dispose of the property according to the terms of such agreement. Campbell v. Dunkelberger, supra, at page 390 of 172 Iowa, page 58 of 153 N. W., states:

''But where the wills are in the same instrument and executed and signed by the parties, it is scarcely possible that this could happen without a previous understanding or agreement between them.''

Maurer v. Johansson, 223 Iowa 1102, 1107, 274 N. W. 99, 102, cites various Iowa decisions in support of the following statement:

''If, as in this case, the wills of the husband and wife, each acting with the knowledge of the other, are drawn at substantially the same time, at their joint request, and contain re-

ciprocal provisions, such wills and circumstances are sufficient to establish the prior contract to make mutual wills.''

In the case at bar the instrument itself, together with the circumstances attending its execution, clearly establishes that it was made pursuant to a prior agreement between the husband and wife.

At this point the main question is whether, under the circumstances of this case, the agreement of the Johnsons to make the joint will constituted a contract which Thore and Axel Wahlstrom may enforce in a court of equity against George Johnson's estate and the beneficiaries under his subsequent will. A court of equity will not decree the specific execution of a contract unless it is fair and the consideration is adequate. McDaniels v. Whitney, 38 Iowa 60; Harper v. Sexton, 22 Iowa 442, 445, 446. There must be at least an honest consideration. When the inequality of consideration is so great as to shock the conscience of the court and indicate an overreaching, specific performance will be denied. Dunlop v. Wever, 209 Iowa 590, 228 N. W. 562.

Page on Wills, 2d Ed., states, in sections 109 and 110:

''The general principles of equity which control specific performance apply to a contract to make a will. * * * Equity will not enforce a contract of this sort unless it is fair and reasonable.''

Canada v. Ihmsen, 33 Wyo. 439, 452, 240 P. 927, 930, 931, 43 A. L. R. 1010, 1017, states:

''We find the broad statement at times that equity will enforce a contract to execute mutual wills. See Schouler on Wills, sections 720, 721. Such a contract, however, like any other, must not alone be just, but must also be based on a sufficient and valuable consideration—a principle of law founded on public policy. See Walpole v. Oxford, 3 Ves. Jr. 402 [30 Eng. Reprint, 1076].''

In Zabel v. Stewart, 153 Kan. 272, 277, 109 P. 2d 177, 180, it is said:

"In the instant case * * * each of the makers had property of substantial value, so that it may not be said that joinder of either party in making the bequests and devises may be disregarded as surplusage, as was done in Moore v. Samuelson, 107 Kan. 744, 193 Pac. 369."

The latter case quotes from Allen v. Allen, 28 Kan. 18, 24, as follows:

" 'The wife, having nothing on which the will could operate, is held to be a mere cipher in the transaction.' "

To the same effect is In re Hansen's Estate, 87 Neb. 567, 127 N. W. 879.

In Rice v. Winchell, 285 Ill. 36, 120 N. E. 572, the court said the question as to what is an adequate consideration must depend largely upon the special facts in a given case. There the joint will gave the widow less than her statutory share of her husband's property. The court found she had been overreached, that the provisions of the will were unfair and unjust, and that there was no adequate consideration received by her to support the agreement.

Baker v. Syfritt, supra, at page 56 of 147 Iowa, page 1001 of 125 N. W., states that where there is a joint will, "whereby the survivor takes some benefit from the estate of the one first deceased," coupled with a devise of the remainder of the estate of both to a third person, "there is an element of contract and mutual obligation between the makers," which may be enforced when the devise becomes irrevocable.

Maloney v. Rose, 224 Iowa 1071, 1075, 277 N. W. 572, 575, says:

"In a compact for mutual wills, the agreement is that each testator will dispose of his property in a certain manner. Each disposition is the consideration for the other. The subject matter of the compact is not the interest of one spouse in the other's property."

In Campbell v. Dunkelberger, supra, at page 392 of 172 Iowa, page 59 of 153 N. W., the widow accepted the life estate in her husband's property and other property.

"Moreover, such agreement had induced him to leave the residue of his estate to his children, when, but for the joining of the wife therein in the disposition of the 'rest and residue of our estates,' he might have made other disposition thereof. This was a sufficient consideration for the agreement fairly to be implied from the language of the will, and the portion of the contract having been fully performed by the deceased, the widow will not be permitted to avoid any of its provisions * * *."

When the joint will was executed Mrs. Johnson had neither substantial estate nor reasonable prospects of securing anything substantial other than from Mr. Johnson. His estate, which was substantial and apparently free from debt, was neither created nor built up by the joint efforts of his wife and himself. Immediately before her death she gave one of her sons a check which reduced her modest bank account (given her by Mr. Johnson) to practically nothing. Her estate was insufficient to pay her burial expenses. Mr. Johnson paid these together with the expenses of her last illness and retained the few household goods she had owned.

Her sons, who had possession of the joint will, evidently understood the situation. There was no effort on their part to probate the instrument as her will. Nor did Mr. Johnson after her death recognize the instrument as her will. He took nothing thereunder. Nor did he otherwise receive anything of substance from her estate.

It is true that under the joint will Mrs. Johnson technically surrendered her statutory inchoate rights in the property of Mr. Johnson. But, had she survived him, she would have received, under the will, his entire estate in fee simple, which included all her statutory rights and more. Mrs. Johnson also gave up her right to pass her estate to someone other than her sons. However, she had no substantial estate as did the husband in Campbell v. Dunkelberger, supra. The essence of the provision for her sons was that they should eventually receive the estate of Mr. Johnson. He had met them only five days before the joint will was executed. Under the circumstances, it is fair to conclude that Mrs. Johnson was the moving party in securing the provision for her sons, that it was regarded as a

791

benefit to her, and that the substantial consideration therefor passed to her from Mr. Johnson.

The remedy of specific performance lies within the equitable discretion of the court. True, such discretion should be a sound legal discretion and not an arbitrary refusal of this equitable remedy. But in this case there was no adequate nor honest consideration on the part of Mrs. Johnson sufficient to support the joint will as an independent contract and entitle the beneficiaries thereunder to specific performance.

In the decree, judgment, and decision of the trial court, Judge Snell finds that there is nothing in the record upon which the proponents of the joint will may appeal to the discretion of the court; that Mrs. Johnson neither contributed nor surrendered anything which could be considered as adequate consideration for the creation of any vested rights in her sons; that Mr. Johnson took nothing under the will and was not estopped from making a subsequent will; that there was no fraud on his part, no wrongs requiring correction, or rights for the protection of which a court of equity should intervene; that there are no equities in behalf of the proponents of the joint will and that the only equities and rights disclosed by the record existed in behalf of George E. Johnson to do with his property as he saw fit. We concur in said findings.

The judgment and decree admitting the subsequent will to probate and denying the equitable relief sought by the beneficiaries of the prior joint will is affirmed.—Affirmed.

All JUSTICES concur.