In the Matter of the ESTATE OF Bernard R. CHAPMAN, Deceased.

Janice LAMPHIER et al., Appellants,

v.

Dorrance CHAPMAN et al., Appellees.

No. 2–57111.

Supreme Court of Iowa.

March 17, 1976.

David M. Hughes, Cascade, for appellants.

Peter W. Klauer, Dubuque, and Thomas Gilloon, Dyersville, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, HARRIS and McCORMICK, JJ.

LeGRAND, Justice.

The question we must first decide is whether the instruments executed in 1962 by Bernard R. Chapman and his wife Hilda Chapman were joint and mutual wills. If this question is answered affirmatively, we must then determine what happens when a survivor attempts to dispose of property in violation of the terms of such an instrument.

The case reaches us on a petition to set aside Bernard's 1962 will. The petition seeks the admission to probate of a later instrument executed by him in 1969 after the death of his wife Hilda. The action was brought under § 633.310, The Code, and is triable at law.

The trial court held the 1962 wills of Bernard and Hilda were joint and mutual. We agree with that determination. The trial court then refused probate of Ber-

nard's 1969 will, holding the 1962 instrument executed by him should be probated as his last will. This part of the judgment must be reversed, even though we reach the same ultimate result by a different and more cumbersome route.

We recite the facts important to this appeal. Bernard and Hilda were married in 1944. At that time, she had no property. In 1962, Bernard and Hilda simultaneously executed separate wills, both included in a single document, and both covered by this preamble:

"Being each possessed of separate property which we have mutually agreed and which we do hereby mutually agree, each in consideration of the promise and act of the other to dispose of such property in the manner hereinafter set forth, do hereby make and declare the two following instruments as our joint and mutual wills."

Each party then devised his or her entire estate by reciprocal provisions with appropriate disposition to be made in the event the spouse did not survive.

Hilda died in 1965. Four years later Bernard, in spite of his attorney's admonition that "there would be trouble," executed a new will, which made several changes in the specific bequests set up in the earlier will; established new $2,000 bequests for each of ten nieces and nephews; and deleted James J. Hill (Hilda's son by her first marriage) as a residuary legatee because "he is divorced." The result was to reduce the residuary estate to six equal shares instead of seven. The remaining residuary beneficiaries are identical in each will— three shares go to Bernard's nieces and nephews (other than those receiving $2,000 bequests) and three shares to Hilda's other three children by her first marriage.

Which prevails—the 1962 will Bernard executed in an agreement with Hilda or the 1969 instrument revoking the mutual will? Put more pragmatically, the question is whether James J. Hill is entitled to a one-seventh share in Bernard's residuary estate or whether the designated nieces and nephews shall each take a $2,000 bequest under Bernard's 1969 will.

As we understand plaintiffs' position, it is two-fold. They say, first, the 1969 instrument effectively revoked the 1962 will and is entitled to probate. Secondly, they insist Bernard's purported joint and mutual will executed in 1962 was not supported by adequate consideration and that its terms are therefore unenforceable in view of his later will. We consider these points in reverse order.

I. Joint, mutual, and reciprocal wills are defined and explained in *Father Flanagan's Boys' Home v. Turpin*, 252 Iowa 603, 607–609, 106 N.W.2d 637, 639–640 (1961). *See also In Re Estate of Randall v. McKibben*, 191 N.W.2d 693, 699–700 (Iowa 1971).

We take it as admitted that the 1962 wills of Bernard and Hilda were joint and reciprocal. The only controversy concerns whether they were also mutual. The *Father Flanagan* case includes this statement:

"A will is 'joint' if it is the will of two or more persons in one instrument; 'reciprocal' if it contains reciprocal gifts or property among two or more makers; but it is 'mutual' in Iowa only if it is executed pursuant to an agreement. * * * [T]he term 'mutual' is properly applied to wills only when there is evidence sufficient to show a binding agreement as to disposal of the property of the makers in a certain way. * * *" (252 Iowa at 607, 106 N.W.2d at 640)

Since the effective date of the Iowa Probate Code on January 1, 1964, the evidence to establish a mutual will must be found in the instrument itself. The statute contains this provision, which is applicable here:

"No will shall be construed to be contractual or mutual, unless in such will the testator shall expressly state his intent that such will shall be so construed." (§ 633.270, The Code)

The preamble already set out satisfies this statutory requirement as to proof, specifically declaring the documents to be the

mutual wills of the testators and directing disposition of their property by virtue thereof.

However, this does not meet plaintiffs' assault on the 1962 mutual wills. Like any other contract, the agreement upon which mutual wills are based must be supported by consideration. We must therefore examine the record in the light of plaintiffs' insistence there was no consideration passing from Hilda to Bernard. If this is true, plaintiffs are correct in saying the purported mutual will was not binding on Bernard. *In Re Estate of Randall v. McKibben, supra,* 191 N.W.2d at 700 and citations; *In Re Estate of Johnson,* 233 Iowa 782, 788, 10 N.W.2d 664, 668 (1943); *Levis v. Hammond,* 251 Iowa 567, 575, 100 N.W.2d 638, 642 (1960).

We hold plaintiffs misconceive the record on the question of consideration. While it is quite true, as they urge, that Hilda had no property when she married Bernard, this was no longer the case when the 1962 wills were executed nor when Hilda died in 1965.

This marriage had endured for 22 years at the time of Hilda's death in 1965. During that period both parties had contributed to the family welfare. Bernard was a competent farmer; Hilda kept the farm records and also operated a chicken and egg business. Together they improved the family's financial position.

As the trial court found, when the 1962 wills were signed, they jointly owned bonds and savings accounts; they held title to several pieces of real estate as joint tenants; and they were vendors in a real estate contract covering land to which they held title as tenants in common. Even if plaintiffs are correct in saying Hilda acquired those assets by way of gift from Bernard, she would nevertheless be possessed of a proprietary interest in them thereafter. We do not consider the manner in which they held title to be controlling. *See Tiemann v. Kampmeier,* 252 Iowa 587, 590–591, 107 N.W.2d 689, 691–692 (1961); *Jennings v. McKeen,* 245 Iowa 1206, 1214,

65 N.W.2d 207, 211 (1954); *Child v. Smith,* 225 Iowa 1205, 1217, 282 N.W. 316, 323 (1938); *Baker v. Syfritt,* 147 Iowa 49, 55, 125 N.W. 998, 1001 (1910). *See also Flohr v. Walker,* 520 P.2d 833, 838 (Wyo.1974).

Furthermore, under the facts now before us, the mutual promises alone of this husband and wife to dispose of their jointly owned property in a manner satisfactory to each of them is good consideration to support the contract pursuant to which they executed their mutual wills. It cannot be said Bernard got no benefit from Hilda's will. He got what he wanted: the contractual assurance that, if he should die first, his property would go according to his wishes. Such an exchange of promises is adequate consideration. *See* Restatement (Second of Contracts, (Tentative Drafts 1 through 7, 1973), §§ 75(1), (2), and 77.

We agree with the trial court's conclusion that the agreement between Bernard and Hilda was supported by adequate consideration.

II. We now consider the effect of our holding in Division I.

The trial court admitted the 1962 will to probate, holding it was irrevocable after Hilda's death. We hold the trial court erred.

A will becomes effective only at the testator's death. Until that time, it may always be revoked. This rule is not changed because, in revoking a will, the testator may violate a contract not to do so.

This does not mean the testator may escape his contractual obligations by the expedient of revoking a will designed to carry them out. It simply means the remedy lies elsewhere. Under various circumstances courts have allowed damages for breach of contract, decreed specific performance in an equitable action, and impressed a trust on the testator's property for the benefit of those favored in repudiated mutual will. *In Re Estate of Randall v. McKibben, supra,* 191 N.W.2d at 701; *In Re Estate of Farley,* 237 Iowa 1069, 1077–1078,

24 N.W.2d 453, 457–458 (1946); *In Re Estate of Johnson, supra,* 233 Iowa at 787, 10 N.W.2d at 667; *Baker v. Syfritt, supra,* 147 Iowa at 56, 125 N.W. at 1001; *Reznik v. McKee,* 216 Kan. 659, 534 P.2d 243, 254 (1975).

 While all of these remedies are proper, depending on particular circumstances, we believe the trust theory should be resorted to here. *See United States v. 1,453.-49 Acres of Land,* 245 F.Supp. 582, 583, 585–586 (S.D.Iowa 1965); *Tiemann v. Kampmeier, supra,* 252 Iowa at 591, 107 N.W.2d at 691–692; *Baker v. Syfritt, supra,* 147 Iowa at 59, 125 N.W. at 1001; *Stewart v. Todd,* 190 Iowa 283, 290–293, 173 N.W. 619, 622 (1919). For cases from other jurisdictions supporting this view, *see Kozyra v. Jackman,* 60 Mich.App. 7, 230 N.W.2d 284, 287–288 (1975); *Moats v. Schoch,* 24 Md. App. 453, 332 A.2d 43, 50 (1975); *Jones v. Jones,* 231 Ga. 145, 200 S.E.2d 725, 727 (1973).

III. In summary, we hold the following:

1. The 1962 wills executed by Bernard R. Chapman and Hilda Chapman were joint and mutual wills founded upon an enforceable contractual agreement;

2. The 1969 will effectively revoked the 1962 will executed by Bernard;

3. The 1969 will executed by Bernard R. Chapman violated the terms of his contract with Hilda concerning disposition of their property;

4. The 1969 will is entitled to probate and the order admitting the 1962 will to probate must be set aside;

5. The property owned by Bernard R. Chapman at the time of his death is impressed with a trust in favor of the beneficiaries under his 1962 will and his executor must distribute the property in accordance with the terms of that instrument in order to carry out Bernard's agreement with Hilda.

IV. Since Bernard's estate must still be administered, the judgment is reversed and the case is remanded with instructions that the district court, sitting in probate, take all steps necessary to ensure distribution of the assets in accordance herewith.

REVERSED AND REMANDED WITH INSTRUCTIONS.