In re Matter of the Probate of the Will of ALEXANDER H. BROWN, Deceased, EMMA FRANCE, Proponent, Appellee, G. W. H. LOAN AND W. L. LOAN, Contestants, Appellants.

**Wills:** CONTEST: EVIDENCE.    In the contest of a will on the ground that
1    it was revoked by the execution of a later will, wherein the subscribing witnesses to the later will were permitted to testify fully concerning its execution, that the testator stated the instrument signed by him was his will and that they at his request and in his presence and the presence of each other signed as witnesses, there was no error in excluding evidence of his statement that he wanted young men to sign as witnesses, or what he said in relation to having made other wills, as the same was irrelevant to any issue in the case.

**Same:** BURDEN OF PROOF: UNCONTRADICTED EVIDENCE: WEIGHT AND SUF-
FICIENCY. One contesting the probate of a will on the ground that
it has been revoked has the burden of proving revocation: and the
fact that proponent was unable to contradict the evidence of con-
testant in proof of the execution of a later will, which it was
claimed contained a revocation of the will in contest, was not con-
clusive on that question; especially as the evidence was circum-
stantial, and from the very nature of the case no contradictory evi-
dence could be secured.

**Wills:** REVOCATION. Under the statute the mere execution of a subse-
quent will does not necessarily revoke a former one, and the ques-
tion of whether it amounts to a revocation depends upon the con-
tents of the subsequent will.

**Same:** SPECIAL INTERROGATORIES: SUBMISSION. Where the record of a
will contest, on the ground of revocation by a later will, failed to
show the execution of any codicil, the court properly refused to
submit to the jury the question of whether the later will operated
.as a revocation of former wills and codicils.

**Same.** As the evidence in this case showed that each of two persons
had drawn a draft of a will for testator subsequent to that offered
for probate, one of which contained a revocation clause and the
other did not, but was consistent with the will offered for probate,
refusal to submit the issue of whether there was a subsequent will
was not erroneous; as an affirmative answer would determine noth-
ing and a negative answer would defeat the contest.

**Evidence:** IMPEACHMENT: REPUTATION FOR VERACITY. The character of
a witness for truth and veracity in the community of his residence
may be shown, as affecting the credibility of his testimony. In the
instant case the evidence of residence in the community where his
character for truth was sought to be shown is held sufficient to
authorize admission of proof of his reputation at that place.

**Wills:** PROBATE: DECLARATIONS OF TESTATOR: FOR WHAT PURPOSE AD-
MISSIBLE. In a proceeding to contest a will on the ground that it
has been revoked by a later will, the declarations of the testator
at the time of executing the later will are admissible on the ques-
tion of his mental condition, and his intention and understanding
of the nature of the instrument, but not as evidence of the contents
of the will; the question of whether the instrument constitutes a
will must be determined from the writing itself and is a question
of fact for the jury.

**Evidence:** TRANSACTIONS WITH A DECEDENT: PREJUDICE. Although proof
of a conversation between the husband of the proponent of a will
and testator was objectionable as a personal communication, still

as the same conversation was shown by other competent evidence its admission was not prejudicial.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

SATURDAY, APRIL 10, 1909.

REHEARING DENIED, TUESDAY, SEPTEMBER 28, 1909.

THE proponent presented for probate a will purporting to have been executed by deceased, Alexander H. Brown, on April 6, 1897. The proponent is a daughter of the deceased. The contestants are grandsons of the deceased. They contested the probate of the proposed will on the following grounds: That in the spring of 1906 the said Alexander H. Brown revoked the said will now offered for probate by the due execution in a lawful manner of a subsequent will, which said subsequent will by its terms expressly revoked the said alleged will now offered for probate. That the will executed by the deceased in 1906 was destroyed by the said Alexander H. Brown in his lifetime, with the intention of revoking it, and by reason thereof said Alexander H. Brown died intestate. There was a trial to a jury, and a verdict sustaining the will. Judgment was entered accordingly, and contestants appeal. —*Affirmed*.

*Bailey . & Murphy*, for appellants.

*Baker & Ball* and *Wade, Dutcher & Davis*, for appellee.

EVANS, C. J.—The preliminary statement already made indicates the general theory of the contest. The contestants introduced evidence tending to show: That in the latter part of 1905, or at the beginning of 1906, H. E. Porter, a lawyer of Lone Tree, prepared for the deceased

a draft of a will which purported to dispose of his entire estate. That the first sentence in such draft of the will read as follows: "I, A. H. Brown, of the town of Lone Tree, County of Johnson, and State of Iowa, being of sound and disposing mind, do make, publish, and declare this my last will and testament, hereby revoking all wills by me at any time heretofore made." That such draft was not signed at that time by the testator, but was taken away by him. That some months later, in the early part of the summer of 1906, the testator signed some instrument in the presence of witnesses Lutz and Younkin, and he requested that they witness the execution of the same as his will, and they both signed the same as subscribing witnesses. They did not see the contents of the paper which was thus signed, but Brown stated to them that it was his will. That some time in the fall of 1906 Brown exhibited an instrument to Porter, which Porter recognized as the draft of the will which he had formerly drawn, and it contained at that time the names of Brown and Lutz and Younkin. The contestants based their contest upon the contention that the alleged will of 1906 contained the clause "hereby revoking all wills by me at any time heretofore made." At the time of the submission of the case they expressly stated into the record that they did not wish any instruction to the jury on the question whether the provisions of the subsequent will in their disposition of property were inconsistent with the terms of the will offered for probate. The case was submitted in accord with this statement.

I. The first error argued by appellants relates to the alleged refusal of the court to permit the witnesses Lutz and Younkin to testify fully concerning the statements made by A. H. Brown at the time he executed the subsequent will. Appellants' argument at this point goes quite beyond the state of the record. It is assumed in the argument that

1. WILLS: contest: evidence.

the alleged subscribing witnesses to the 1906 will, Lutz and Younkin, were not permitted to testify to the statements of Brown concerning the instrument which he was then executing. It is argued that the contestants were entitled to prove that Brown said the instrument which he was then executing was his will. This contention may readily be conceded. Turning to the record, we find that each of the witnesses testified to that effect without objection. From the testimony of Younkin we quote as follows: "He said he had a will he wanted me to sign." Again: "Well, he (Brown) walked up to the desk and signed it. He said it was a will, and stepped up and signed it, and then Mr. Lutz signed it." Younkin also testified that Brown said he wanted "young men" to sign as witnesses, and this was ruled out as immaterial. There was no error in this ruling. After Younkin had testified to all the statements above quoted, contestants' counsel put to him the following question: "Mr. Brown told you it was his will, didn't he? (Objected to as leading. Sustained)." This question was also put: "I will ask you if Mr. Brown, at the time he asked you to sign this instrument as a witness, made any statement in reference to having made other wills." This question was objected to, and ruled out by the court. There was no error in these rulings. The facts sought to be elicited by these questions had no relevancy to any issue in the case. We quote from the testimony of Lutz the following as to what Mr. Brown said to him: "I got a paper here I want you to sign. It's my will. He says: 'I have got to have two witnesses.' . . . He (Brown) was standing halfway like between the door and the desk, and made the statement he had a paper which was his last will that he would like to have us sign. He stepped up ahead of me to the desk and opened the paper—partly opened it; didn't open it all up—and signed the will." The expression "and signed the will" was stricken out, as being a mere conclusion

of the witness as to what the paper was. The following question put to this witness was also ruled out on the same ground: "Q. You may state whether or not Mr. Brown signed this will in your presence and in the presence of Mr. Younkin." The rulings were proper. Other questions were properly ruled out as being leading. The following testimony of this witness was received without objection: "Mr. Brown said that the instrument he asked us to sign was his last will. He made the statement that this was his last will and he wanted us to sign it. He stepped up and signed it, and then I stepped up . . . and I signed it, and Mr. Younkin stepped up and signed it. . . . He said he wanted me to sign it. It was his will. He wanted me to sign it as a witness." It is manifest from the foregoing quotations that the contestants were allowed abundant latitude, so far as the introduction of testimony was concerned, as to the statements of the testator at the time of signing the alleged will. It should be said, however, that appellants' argument at this point is based in part upon an instruction of the court in relation to this testimony. Appellants claim that this instruction eliminated such testimony as was introduced. We will consider this instruction with others in a later paragraph.

II. At the close of the evidence the contestants moved for a directed verdict, on the ground that their evidence was uncontradicted to the effect that the subsequent will was executed, and that this fact of itself had

2. SAME: burden of proof: uncontradicted evidence: weight and sufficiency.

the legal effect to revoke the former will. They also urged that the evidence was uncontradicted that the alleged will of 1906 contained a revoking clause, and that they were entitled to a directed verdict on either theory. This contention of appellants is so clearly untenable that we will not dwell upon it at great length. The burden was upon the contestants to prove the facts upon which they based the

contest. The fact that proponent was unable to contradict the testimony of their witnesses as to particular facts did not entitle them to have such statements accepted as true. From the very nature of the case the proponent could not produce contradictory evidence on the particular facts in question. Nor can the appellants say that the facts testified to by their witnesses necessarily and directly proved the execution of a subsequent will. These facts constituted circumstantial evidence. The ultimate fact could only be found by proper inference from the circumstances. There was the evidence of Buell to be considered, who had drawn a draft of a will for Brown shortly prior to his interview with Lutz and Younkin. This draft of a will contained no revoking clause, nor was it inconsistent with the will offered for probate.

Appellants' contention that the mere execution of a subsequent will necessarily revokes a former will cannot be sustained. Section 3276 of the Code does not provide

**3. WILLS: revocation.** that the execution of a subsequent will necessarily revokes a former will. It provides that "wills can only be revoked in whole or in part by . . . or by the execution of subsequent wills." Whether in a given case a subsequent will amounts to a present revocation of a former will depends upon the contents of the subsequent will. *In re Will of Dunahugh,* 130 Iowa, 695; *Schillinger v. Bawek,* 135 Iowa, 136. In the case at bar appellants based their contest upon the allegation that the subsequent will contained a revoking clause. That narrowed the field of inquiry, and the case must be reviewed upon the same theory.

III. After the close of the evidence, before the argument to the jury had begun, appellants requested the court

**4. SAME: special interrogatories: submission.** to submit to the jury for special finding the two following interrogatories: "(1) Did Alexander H. Brown during his lifetime make and execute a will subsequent to the will which is being

offered for probate, which was executed in 1897? (2) Did
such subsequent will contain a clause revoking all former
wills and codicils?" The trial court refused to submit
these interrogatories. We are not able to discover from
the record that any exceptions were taken to this refusal of
the court, unless a general statement contained in the certi-
fication of the record by the trial judge can be deemed
sufficient to show that exceptions were taken to all rulings.
The record, which is certified to as being complete, does
not show any exception. Passing that question, however,
we have gone into the merits of appellants' complaint at
this point. We think that interrogatories similar to those
requested could very properly have been submitted. Turn-
ing, however, to interrogatory two, it was objectionable in
form in its last two words, "and codicils." There was not
a word in the record on the subject of codicils. There
was no reason in the record why any reference to them
should be submitted to the jury. No reference to codicils
could properly be submitted to the jury without some
explanation from the court in the form of an instruction
as to what a codicil was. In making a finding of fact on
this question the jury would be required to deal with the
very contents of the instrument as testified to, and no
reference to codicils was contained therein. We have
nothing to do now with the question whether the revoca-
tion of a will would necessarily revoke its codicils, if
any. The jury would have nothing to do with that. There
was nothing in the evidence which would justify any
reference to "codicils" in the instructions. We think,
therefore, that the trial court was justified in refusing
interrogatory two.

Whether appellants cared to have interrogatory one
submitted without interrogatory two does not appear from
the record, nor from the argument. The
5. Same.        alleged error of the court in this respect
has been treated as one error, and the complaint of appel-

lants has been directed to it in that way. We think the two interrogatories were quite inseparable, and that appellants have so regarded them in their argument. An answer to interrogatory one, without more, would have determined nothing, in view of the state of the record. It appeared from the evidence, not only that Porter had drawn a draft of a will for Brown, but that Buell had drawn one also. The contents of these two drafts were materially different. If the jury had answered interrogatory one in the affirmative, it would have determined nothing. If they had answered it in the negative, it would have been fatal to the appellants. We think, therefore, that appellants are in no position to complain of error in this ruling of the court.

IV. One of the appellants' most important witnesses was H. E. Porter, an attorney at Lone Tree. His testimony as to the draft of the alleged will in the early part of 1906, and his further testimony as to seeing an exe-

6. EVIDENCE: impeachment: reputation for veracity.

cuted will in the post office in the fall of 1906, furnished the two pillars upon which appellants' case rested. The proponent was permitted to introduce impeaching evidence against him to the effect that his reputation for truth and veracity in and about Lone Tree was bad. It is contended that this was error, for the reason that Porter was not a resident of Lone Tree at the time of the trial. The evidence concerning his residence for the last three or four years preceding the trial is somewhat indefinite. He located as an attorney at Lone Tree in the year 1901. In 1903 he engaged with others in some business enterprise that kept him in Ohio a large part of his time. His wife continued to maintain the home at Lone Tree. Porter was at Lone Tree frequently, and was confessedly there in the early part of 1906, when he made the draft of the will, and again in the latter part of 1906, when he saw the executed will. In September, 1907, he moved to Seattle.

The trial was had in February, 1908. He testified that he had "an office in Lone Tree yet," and his wife was there. We quote from his examination as follows: "Q. That is your residence, is it, now? A. Well, I am a little lost even on that. After I left Ohio, I presume that Lone Tree would be my home. I went to Ohio for the purpose of making my residence there, and Mrs. Porter has had the boxes packed for five years. She intended to go down there, and afterwards refused to go, and when I lost everything I had there I presume that my home, if I had a home, would be in Lone Tree." We are well satisfied under this showing that the proponent was entitled to prove the reputation of the witness in Lone Tree. *Schoep v. Bankers' Insurance Co.,* 104 Iowa, 354; *McGuire v. Kenefick,* 111 Iowa, 147; *State v. Potts,* 78 Iowa, 656. The rule in such cases is necessarily flexible, and the admissibility of the evidence must depend upon the particular circumstances. We think, also, that some latitude of discretion should be permitted in the trial court. It is clear, from the evidence in this case, that the witness had acquired a reputation in Lone Tree. The circumstances shown would not warrant the presumption that he had lived long enough at any other place to acquire a reputation. If a person of mature years has acquired in the community of his residence a bad reputation for veracity, a way of escape therefrom should not be opened too easily, lest a great wrong be done to the litigant. The characters of mature persons are not easily changed in that respect, and too much presumption in favor of a change should not be indulged. In this case the removal of the witness was into a large city, where his character might be hidden in obscurity for years without resulting in a general reputation, either good or bad. The whole structure of appellants' case rested upon his uncorroborated testimony concerning an interview at the post office. His character and credibility were of the highest importance

for the consideration of the jury in weighing such important evidence. Under the facts shown, we think it was highly proper for the trial court to permit the inquiry as to his reputation for truth and veracity at Lone Tree.

V.    The contestants complain of instructions five and seven, which were as follows:

(5)    The first question for you to determine is:    Did A. H. Brown make a will, subsequent to the will which has been admitted in evidence in this case and marked as Exhibit A?    To aid you in determining this question, you are instructed that any person of full age and sound mind may make a valid will, and you are instructed that the undisputed testimony in this case shows that A. H. Brown was of full age and of sound mind; and you are further instructed that under the laws of this State a will is an instrument executed by a person of full age and sound mind, for the purpose of disposing of his property after his death, which instrument must be signed by him in the presence of two witnesses, who must sign the same as such witnesses in his presence and in the presence of each other, and it makes no difference upon what part of such instrument said witnesses may sign, so long as they sign as witnesses as above instructed.    Now, if you should find that the contestants have established by a preponderance of the evidence that the said A. H. Brown, subsequent to the execution of Exhibit A, executed an · instrument in writing substantially as claimed by contestants, disposing in whole or in part of his property, the same being executed in accordance with the laws, as set out in the instruction, for the execution of a will, then you will upon the point find that he executed a valid will subsequent to the execution of Exhibit A.    The next question for you to determine is:    Did said subsequent will, if any, contain a clause revoking Exhibit A?    In this connection you are instructed that if said will, if any, contained a provision substantially as follows:    'Hereby revoking all wills by me at any time herebefore made'— that the same would constitute a sufficient revocation of the will introduced in evidence and marked as Exhibit A, and you are instructed that the burden of proof is upon

contestants to establish by a preponderance of the evidence that such a clause, or one of the same or similar import, was contained in said subsequent will, if any, and, if contestants have not done so, then you will find for the proponent, and it will not be necessary for you to consider the case further.

(7) You are instructed that, in determining whether any instrument, if any, executed by the decedent, A. II. Brown, was a will, you will give no weight to any statement or declaration made by him to the effect that any instrument executed by him, if any, was a will.

Appellants complain that the effect of instruction No. five was to lay upon them a greater burden than the law imposed. We have already indicated our views in that respect in a preceding paragraph. The theory adopted by the court in this instruction is in strict accord with the contestants' pleading. But it is urged by appellants that the effect of these two instructions together was to eliminate from the record the testimony of the witnesses Lutz and Younkin as to the declarations of the testator at the time he executed the 1906 will in their presence. It is quite possible that a jury might have misunderstood the real effect of instruction No. seven. It deals with a fine line of distinction, and the court might very properly have pointed out the distinction in such a way as to avoid possible misunderstanding. It was also within the right of contestants to ask for an additional instruction, by way of precaution, to avoid possible misunderstanding. This precaution does not seem to have been deemed necessary at the time, either by the court or by contestants' counsel.

We have already indicated our view that the declarations of the testator at the time of the alleged will of 1906 were admissible. If admissible, they

7. WILLS: probate: declarations of testator: for what purpose admissible.

were proper to be considered for some purpose. They were admissible as attendant upon the act of execution of the will. They were proper evidence of the mental condition of the tes-

tator and of his intention and understanding of the nature of the instrument which he was executing. They were not evidence of the contents of the will. *In re Will of Duna-hugh, supra.* Whether the instrument was a will was a question to be determined from the contents. The declarations of the testator were evidence that the testator believed the instrument to be a will and that he intended it as such. Notwithstanding such belief, its provisions might as a matter of law fall short of constituting a will. The belief of the testator that the instrument was a will would not constitute it such. In a legal sense, therefore, his declaration of such belief would not be evidence that it was such. Whether the instrument was a will in a legal sense must be determined from its contents,' and the court properly instructed the jury in No. five as to what would constitute a will. If the jury should find the contents of such instrument to be substantially as testified to either by Porter or by Buell, then by instruction No. five the jury was peremptorily instructed that the instrument was a will. The declaration of the testator that it was a will could not aid the jury in determining the question of its contents, and such declaration was of necessity a conclusion of mixed law and fact. If the jury failed to find the contents of the paper to be substantially as set forth in instruction five, then contestants could not prevail in any event. Appellants have, therefore, no ground of complaint here.

VI. The last error complained of has reference to the testimony of Mr. and Mrs. France as to personal transactions or communications between them and the deceased. A large number of questions and answers put to each of these witnesses are complained of, and it will serve no useful purpose for us to set them out in full. We have considered them all, and find no error in the rulings, save one. The witness France was asked to state whether

8. EVIDENCE: transactions with a decedent: prejudice.

he ever heard the deceased say anything to indicate his feelings towards Mr. Porter. He answered: "Well, sir; he often advised me not to have anything to do with him at all." The question was properly objected to, and the motion was promptly made to strike the answer. This motion ought to have been sustained. The answer clearly stated a personal communication. Erroneous though this ruling was, we are satisfied that it was wholly without prejudice. Considerable proper testimony was introduced as to statements of this nature made by the deceased to other persons in the hearing of the witness. We do not think that this line of evidence was intensified to any degree by reason of the alleged fact that this statement was made to this witness. If it was proper to consider the statements of the deceased at all on that subject, the fact that he made the statement to this witness, rather than to some other person, was entirely immaterial, and gave no additional significance to the testimony of that nature. We are satisfied, therefore, that no possible prejudice resulted from this error.

We find no prejudicial error in the record. The judgment below is therefore *affirmed*.