IN RE ESTATE OF HIRAM A. WHITE.

No. 40184.

MARCH 18, 1930.

*C. H. E. Boardman,* for appellant.

*F. M. Haradon* and *Matthew Westrate,* for appellee.

DE GRAFF, J.—One Hiram A. White, during his later years, was a member of the Iowa Soldiers' Home, located at Marshalltown, Iowa. On April 25, 1922, he went to the office of Colonel John C. Loper, adjutant at said Home, and stated, in substance, to Colonel Loper that he (White) wanted to make some kind of a statement, "so we would know what to do with his property, if he [White] passed away;" or, to phrase the statement of White in another form, according to the testimony of Colonel Loper, he "said he [White] wanted, if he died, to make some kind of disposition of his property,—his money." Thereupon Colonel Loper went with Mr. White to the office of Isabella Sellers, stenographer at said Home, and the document herein set out was dictated, the colonel stating that the initial sentence and the rest were "in Mr. White's exact language." After the document was typewritten by the stenographer, it was signed by Hiram A. White, and witnessed then and there by Isabella Sel-

lers and John C. Loper. The document, as signed and witnessed reads as follows:

"April 25, 1922.

"B. C. Whitehill, Commandant.

"In case of my death you are directed to ship my remains to Ed Link, Muscatine, Iowa, who will look after the burial and all business that I have unfinished. You are hereby directed to pay to the said Ed Link all the money that I may have in deposit in the Iowa Soldiers' Home. The Fidelity Savings Bank of Marshalltown, Iowa, is hereby directed to pay to the said Ed Link all the money I may have on deposit with the said Fidelity Savings Bank of this city.

"Hiram A. White.

"Witnesses

"Isabella Sellers
"Jno. C. Loper."

There is but one question on this appeal: Was the instrument tendered as a will in fact testamentary? The proponent's propositions are that the said document (1) was testamentary in character, (2) took immediate effect upon the death of the maker, (3) was ambulatory in character and revocable at pleasure, and (4) did not pass an interest *in praesenti*. The contestants contend to the contrary on each of these propositions. We therefore have a question of the construction of the language used by the creator of the document, viewed, if necessary, in the light of the circumstances surrounding the execution of said document. No question as to the mental condition of Hiram A. White, undue influence, or the legal requisites in the making of the will, is involved. In brief, all matters are eliminated except the character of the document before us.

Hiram A. White departed this life February 13, 1928. The document was filed in the office of the clerk of the district court of Iowa in and for Marshall County, February 20, 1928. It was filed as the last will and testament of Hiram A. White, and was admitted to probate March 17, 1928. Petition to set aside will and probate was filed by the contestants on May 12, 1928, and the contest came on for hearing April 1, 1929. Upon the close of all the evidence, and after motions for directed verdict were made respectively by the contestants and the proponent, the

trial court sustained the proponent's motion, and verdict was returned for the proponent. Judgment was entered accordingly, and this appeal was taken.

The law is quite definitive in distinguishing a testamentary document from one nontestamentary in character. This is clearly shown, not only by our standard textbooks, but also by the decisions of our courts of last resort. The test is well stated in 1 Alexander's Commentaries on Wills 50, Section 46:

"In cases where doubt arises as to whether the instrument is a will or of some other character, the true test is whether the maker executed the document with *animus testandi*. To be a will, the maker must have intended to pass his property only after his death, and to pass it by the particular instrument in question, although he may have designated it by a different name, and, through ignorance of the law, may not, in fact, have known that he was making a will. The test of the character of the instrument is the intention of the maker at the time of its execution, and a construction of the document must be based upon its provisions."

The cardinal rule in the construction and interpretation of wills is that the intention of the testator must be ascertained, if possible, and, if it is not in contravention of some established rule of law or public policy, must be given effect; and by this is meant the actual, personal, individual intention, and not a mere presumptive intention, inferred from the use of a set phrase or a particular form of words. See Thompson on Construction of Wills (1928) 58 *et seq.*, Section 45; *Burlington University v. Barrett*, 22 Iowa 60; *Flynn v. Holman*, 119 Iowa 731; *In re Estate of Longer*, 108 Iowa 34; *In re Estate of Mount*, 189 Iowa 279; *In re Estate of Ullrich*, 189 Iowa 868. For further discussion and citations of our own decisions in cases involving the testamentary character of a document, see *Hall v. Hall*, 206 Iowa 1.

As a matter of further preliminary statement of legal principle it may be said that there is no fixed form to express the *animus testandi*, but the true and actual meaning of the testator will be allowed to prevail if, in view of the instrument as a whole and the circumstances attending its making, such intent is fairly shown. *Hiller v. Herrick*, 189 Iowa 668. The true ob-

ject of testamentary interpretation is to ascertain, if possible, the purpose of the testator, and when it is ascertained, to give it effect, if this can be done without violating any settled rule of law. *In re Estate of Clifton,* 207 Iowa 71. If possible, every clause and word in a will should be given meaning, and the duty of the court is to determine what the real desire and intention of the testator were. When this intention is found, it is absolutely controlling. *In re Estate of Dodge,* 207 Iowa 374.

In the case at bar, there is no occasion to invoke the rule of extrinsic evidence in respect to written instruments. There is no condition annexed to the instrument in question. It cannot be challenged by reason of its legal form. Its very language discloses that the writing was testamentary in character. The initial words are: "In case of my death." The instrument, read as a whole, discloses that the language is couched *in futuro.* The maker of this instrument did not contemplate the passing of title *in praesenti,* since the instrument does not say, "All the money that I *now* have," but, "all the money that I *may* have" on deposit in two different places (named in the instrument) shall pass to the beneficiary Ed Link "in case of my death." The *animus testandi* stands out boldly, and we discover no room for doubt that the paper was properly admitted to probate as the last will and testament of Hiram A. White. As said in *In re Estate of Longer,* supra:

"When the *animus testandi* is established, the character of the instrument is fixed. It is a will."

The polestar in the testamentary heaven of this case is visible without the aid of a legal telescope.

The judgment entered by the trial court is—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.