IN RE ESTATE OF FRED RAMTHUN, deceased.

No. 49401.

(Reported in 89 N.W.2d 337)

APRIL 9, 1958.

Gray & Gray and G. L. Gray, all of Rockwell City, for appellants.

L. S. Hendricks, of Rockwell City, for appellee.

LARSON, J.—Pursuant to a pretrial conference two issues were submitted to the trial court, the answers being deemed decisive of this suit, which under stipulation was tried in equity. They were: (a) Is the instrument of April 8, 1955, a testamentary instrument, and if so, is it a codicil or a revocation of the instrument designated as a will and dated November 3, 1930? (b) Is the instrument of April 8, 1955, a binding contract, a contractual will, or irrevocable will limiting the power of alienation or testamentary disposition of the property by Albert Ramthun?

The trial court held that with the exception of a specific bequest of $5000, which has been paid, "There is neither word, suggestion nor inference in the document of April 8, 1955, nor in the surrounding circumstances, limiting in any way Albert Ramthun's [the surviving joint tenant] power of alienation, sale, gift or testamentary disposition of any of the property involved herein or any other property he may own or acquire." We agree.

The facts are not complicated. Fred Ramthun, age 71, died June 11, 1955, unmarried and without issue. He is survived by one brother, Albert Ramthun, the real defendant herein, and three sisters, and twenty-four nephews, nieces and grandnieces, all of whom are claimed to be in line of descent according to the laws of intestacy, who are the plaintiffs, although all do not join in this appeal.

According to the inventory filed in this estate, decedent was the owner of cash and personal property of the estimated value of $1485.10, plus 160 acres of land held in joint tenancy with Albert, checking accounts in two Rockwell City banks of $43,541.59 in his and Albert's names, and certain government

bonds appraised at $4824.75 payable to Fred Ramthun or Albert Ramthun.

Two instruments are on file in the office of the clerk of court which purport to be the Wills of Fred Ramthun. The principal controversy seemed to revolve about the one executed April 8, 1955, signed by both Fred and Albert Ramthun and witnessed by two parties whose competency is not questioned. It provided as follows:

"To WHOM IT MAY CONCERN: In consideration of kindness shown us and for services rendered us during our lifetime we, Fred Ramthun and Albert Ramthun, being in right mind and full possession of our mental faculties, do herewith bequeath and give from our estate after our death, the sum of Five Thousand ($5,000) to Henry Wendland and do order that such amount in cash be paid to him. We have affixed our signatures to this document on the 8th day of April, 1955 in the presence of these witnesses. * * *"

It appears this instrument was drafted by a minister visiting the hospital where Fred was a patient. No question as to competency, undue influence or mistake is raised, and it must be assumed the acts of the parties were as they intended.

As to the other circumstances, prior to February 1, 1954, Fred Ramthun was the record titleholder of the real estate involved. At that time he executed a deed to the property to Fred Ramthun and Albert Ramthun as joint tenants with right of survivorship. A joint bank account was established by bank signature card dated July 23, 1952. There is no showing when the government bonds were purchased, but apparently they had been jointly owned for some time.

The other instrument on file in the clerk's office is clearly a will of Fred Ramthun dated November 3, 1930, duly executed and witnessed, providing for the payment of his just debts, etc. devising " 'all of my property, real and personal, which I may own at the time of my death to my brother Albert Ramthun' " and appointing Albert Ramthun " 'Executor of this my last Will and Testament, hereby revoking all former Wills by me made.' "

As a result of the pretrial conference it was established further that Letters of Administration were duly issued to Henry Wendland on December 14, 1955, and that he filed therein a list of heirs, inventory, and description of the real estate, as well as how it was held on the date of death of decedent. The instruments under date of April 8, 1955, and November 3, 1930, were produced and filed in the clerk's office at the appellants' request. Due to the fact that there were insufficient funds in Fred's separate accounts, the $5000 bequest referred to in the 1955 instrument was paid by the survivor, Albert Ramthun, and a receipt placed on file in the estate.

I. The instrument of April 8, 1955, is a testamentary instrument. There is no dispute as to that conclusion. To determine the character of such an instrument, the court looks to the language of the document itself, viewed if necessary in the light of the circumstances of its execution. Home Ins. Co. v. Fidelity-Phenix Fire Ins. Co., 225 Iowa 36, 279 N.W. 425. The document here executed makes a specific bequest from the estate of the makers, in futuro. It is properly signed and witnessed according to the requirements of our Code. In re Estate of Longer, 108 Iowa 34, 78 N.W. 834, 75 Am. St. Rep. 206; In re Estate of White, 209 Iowa 1210, 229 N.W. 705; In re Estate of Mathews, 234 Iowa 188, 12 N.W.2d 162.

II. The will of Fred Ramthun dated November 3, 1930, was duly executed and apparently was his last will and testament when executed and still is unless revoked or modified by the instrument of April 8, 1955. It is to be noted that the instrument of April 8, 1955, did not use the words "hereby revoking all former wills by me made" as did the will of November 3, 1930. Therefore, if it did revoke the former will, the intent to do so must be found from other sources than by express terms.

The Iowa Code, section 633.10, provides that a will can only be revoked "* * * in whole or in part by being canceled or destroyed by the act or direction of the testator, with the intention of so revoking them, or by the execution of subsequent wills. * * *." Whether a former will is revoked in whole or in part must depend upon the testator's intent as gathered by his

acts and from the instrument or instruments purporting to cause the revocation. Blackford v. Anderson, 226 Iowa 1138, 1154, 286 N.W. 735, and cases cited therein; In re Estate of Rice, 191 Iowa 206, 182 N.W. 170; In re Will of Dunahugh, 130 Iowa 692, 107 N.W. 925; In re Will of Brown, 143 Iowa 649, 120 N.W. 667.

█ It is the general rule in Iowa that a subsequent will, not in terms revoking the former will, operates as a revocation of the first only insofar as it indicates a different intention as to the disposition of the same property. We have consistently held that all such wills not inconsistent with each other must be construed together, and all their provisions so far as possible shall be carried into effect. In re Will of Brown, supra, and authorities cited therein.

█ The tendency of courts to harmonize, if at all possible, the conflicting instruments, Fry v. Fry, 125 Iowa 424, 101 N.W. 144, has given rise to some comment by writers. See 15 Iowa L. Rev. 231, 232. The criticism is somewhat justified if this determination be based only upon an abhorrence of a partial intestacy as raising the presumption against such an intent. However, even under the rule advocated in that article, we find nothing very persuasive appearing in the case before us to indicate that Fred Ramthun *desired or intended to depart completely* from the provisions of his former will. On the contrary, everything pointed toward his desire that his brother, Albert, have all the property absolutely with the exception of the $5000 which both agreed should be given to Henry Wendland.

Where all the terms of the will have been changed, substantially indicating a desire and intention to change the will completely, the mere failure to name executors in the second will was properly held not grounds to permit the first will to stand. Kearns v. Roush, 1929, 106 W. Va. 663, 146 S.E. 729. Such is not the case here, where the only change is to reduce a total bequest by a specific bequest to another of $5000. No further intent can be presumed under the language or the circumstances. To attempt to do so would be to invade the field of conjecture, speculation and surmise.

Albert has acknowledged and paid the bequest to Wend-

land. The court, we think, therefore properly found both wills entitled to probate, but that under these circumstances there was no need of probate. We conclude that unless some rights are found to exist in the appellants, this determination was just and proper. In other words, under the will of November 3, 1930, or as a joint tenant, survivor Albert now owned all the property absolutely unless by agreement or contract he had in some manner encumbered that ownership in favor of appellants.

III. The gist of this controversy is disclosed by a question asked by the court. It was: "Is the will of April 8, 1955, contractual and irrevocable so as to limit the power of alienation or testamentary disposition of property by Albert Ramthun?"

■■ As far back as 1915 we discussed some of the elements involved in this question in the case of Campbell v. Dunkelberger, 172 Iowa 385, 389, 153 N.W. 56, 58. It was there stated that two persons may unite in a single will, citing Baker v. Syfritt, 147 Iowa 49, 125 N.W. 998. We said: "The joint will contained in a single instrument is the will of each of the makers, and at the death of one it may be probated as his will and be again admitted to probate at the death of the other, as the will of the latter. A joint will then is one where the same instrument is made the will of two or more persons and is jointly signed by them. Such will is not necessarily mutual or reciprocal. Mutual wills may be defined as the separate wills of two persons which are reciprocal in provisions."

■■ A will, of course, could be both joint and mutual. Mutual wills may or may not be revoked at the pleasure of either party, according to the circumstances and agreements upon which they have been executed. In order that either party be denied the right to revoke, it must appear by clear and satisfactory evidence, or on the face of the wills, that they were executed in pursuance of such contract provisions between the parties. Even then, by the weight of authority either party may revoke during the lifetime of both, providing notice be given the other party of such intention. It is also generally stated that after death of one of the parties, if the other party accepts the benefits or provisions of the will made for him, then the other party may not dispose of his property otherwise than

according to the terms of the will. Jennings v. McKeen, 245 Iowa 1206, 65 N.W.2d 207, and cases cited therein; Child v. Smith, 225 Iowa 1205, 1214, 282 N.W. 316; Culver v. Hess, 234 Iowa 877, 14 N.W.2d 692.

All wills are by nature ambulatory, and thus their provisions may be changed prior to death by the maker unless by contractual provisions others' rights thereunder become fixed. In other words, a will is revocable only to the extent that the testator has not contracted to make it irrevocable. DeJong v. Huyser, 233 Iowa 1315, 11 N.W.2d 566; Child v. Smith, 225 Iowa 1205, 282 N.W. 316; Goddard, Mutual Wills, 17 Michigan L. Rev. 677. Also see a good recent discussion of this subject in Contracts to Make Wills, by Sparks, New York Univ. Press, 1956. Therefore, in any joint and mutual agreement to devise or bequeath property, we search for relevant contract terms which alter revocability of a will's provisions as well as those that provide the usual contract elements of offer, acceptance and consideration. As a general rule, when these elements are made to appear, the construction of the agreement is for the courts, and equity will lend its enforcement power only to those provisions that are just and reasonable. In re Estate of Johnson, 233 Iowa 782, 788, 10 N.W.2d 664, 148 A. L. R. 748.

Due to our understanding of wills generally, some authorities contend, with some logic, that courts should require an even higher degree of proof to sustain a contract to make the provisions in a will irrevocable than that required to prove contracts generally. The merit in this contention, as heretofore pointed out, is that wills, being ambulatory by nature, are presumed revocable unless the contra clearly appears. It must be pointed out that evidence of a strong feeling of obligation is not sufficient evidence of a contract between the parties. Such may indicate an understanding in joint wills, but this is not sufficient proof of a contract.

The 1955 will before us is joint, but in the usual sense not mutual. There are no express reciprocal provisions. Queries: Do any of its terms evidence an agreement not to revoke or not to alter the disposition of the property provided thereby after the death of one of the parties? Or, as stated in the question

submitted to the court: Is the instrument of April 8, 1955, a binding contract, a contractual will, or irrevocable will limiting the power of alienation or testamentary disposition of the property jointly owned prior to Fred's death? The rule of evidence in either case is clear. The proof required to establish a contract, contract will, or cause the provisions therein to be irrevocable must be clear, satisfactory and convincing. A mere preponderance of the evidence is not sufficient. While such evidence may be found in the instrument itself or produced from surrounding circumstances, the proof relating to those surrounding circumstances is often difficult to obtain due to other rules of evidence, such as the so-called "dead man" rule.

Let us then consider what is the most that can be claimed for the agreement between these parties. By specific terms in the instrument of April 8, 1955, Albert and the decedent bequeathed the sum of $5000 to a third party. To this extent both agreed to encumber his interest in the whole. While there appears to be no specific reciprocal provisions in this instrument which may be termed a consideration when accepted, it may be assumed that the agreement between these parties, evidenced by the express terms unrescinded prior to the death of Fred, would bind Albert so as to give the third-party beneficiary, Henry Wendland, a vested interest. However, we are not faced with that problem here, for the survivor has acknowledged that obligation and paid it. See Baker v. Syfritt, supra, 147 Iowa 49, 125 N.W. 998. The trial court designated that issue as moot.

Did the brothers agree to do or not to do more?

It is appellants' earnest contention that they are also third-party beneficiaries under the contract or will of April 8, 1955, and as such their interests are also vested or at least fixed to the extent that after Fred's death Albert Ramthun could not alienate or dispose of the real or personal property involved, except by the laws of intestate succession.

It is their contention that the agreement or contract between Fred and Albert, the joint tenants at the time of executing the April 8th instrument, was that $5000 was to go to Wendland after the death of both parties and that the residue descend as

intestate property to the heirs of the brothers. They point out that the law provides where there are no residuary legatees named in the will, the remainder, if any, would descend to their heirs. In re Estate of Dluhos, 246 Iowa 1043, 1051, 70 N.W.2d 549.

Stated otherwise, they contend the agreement to be arrived at from the terms of the April 8th instrument and the surrounding circumstances and the laws of descent is the same as if these heirs had been named specifically as residuary legatees. It is a novel and ingenious argument and perhaps, under the statements sometimes made by courts in considering this perplexing problem, it would seem to follow. Jennings v. McKeen, supra, 245 Iowa 1206, 65 N.W.2d 207, and cases cited.

This court has indeed indicated that the execution of joint or mutual wills infer agreements not expressed in the will or wills themselves. Culver v. Hess, supra, 234 Iowa 877, 14 N.W.2d 692, and cases cited. However, in the very recent case of In re Estate of Lenders, 247 Iowa 1205, 1213–15, 78 N.W.2d 536, we further discussed this problem and held that the only agreement which may be inferred from such an instrument is that each party will dispose of his property as provided in the will or wills, as the case may be. 94 C. J. S., Wills, section 119; 57 Am. Jur., Wills, section 694, page 468.

In the Lenders case, supra, we also considered the extent of relevant inferences. We pointed out it was the advocate's burden to prove by "clear and satisfactory evidence" the alleged agreement relied upon, and cited many cases. We also rejected there the contention that an oral agreement not to revoke could be inferred where it merely appeared mutual wills were executed at the same time, with the knowledge of both parties, and contained similar provisions. Also see Hale v. Iowa-Des Moines Nat. Bk. & Tr. Co., 243 Iowa 303, 310, 51 N.W.2d 421; 57 Am. Jur., section 695, page 469.

Here the only inference in which we can indulge is that Fred and Albert Ramthun agreed to dispose of their jointly-owned property as specifically provided in the instrument, which was to give $5000 therefrom to Henry Wendland. It is true that when no residuary provisions appear in a will, the

law provides the remainder, if any, will descend as intestate property to the heirs of the testator. In re Estate of Dluhos, supra, 246 Iowa 1043, 1051, 70 N.W.2d 549. The contention that we must infer such a disposition was contemplated by the brothers or that such contemplation must be considered as a part of the provisions of the will is unsound. It must be based on the claim that it gives rise to the inference that those were the terms of the contract agreed to by each brother when executing the joint instrument. Obviously, proof of facts upon which such an inference may rise is lacking.

While the contention may have an element of logic, the immediate answer to it is that the remainder does not pass by the terms of the will but by the provisions of the statute relating to descent of intestate property. It is a far cry from the proof which would result from a provision in the instrument signed by the brothers providing a life estate in the survivor and the remainder in their designated heirs. In the latter case the terms would indeed be express and restrictive, reflecting or inferring an agreement not to revoke. The mere fact that these persons might hereafter inherit this property, and that this result will occur unless Albert desires to dispose of the property otherwise, is not a fact from which it may be inferred that such third-party interest was contemplated and was included in the offer and acceptance of such terms by these brothers prior to executing the will of April 8, 1955. Having left it unsaid, the contrary would appear more reasonable.

Except for any inferences which may be drawn from the transfer of Fred's title to joint ownership, and from the express terms of the instrument of April 8, 1955, we find no evidence at all relative to any agreement between Fred and Albert Ramthun to make a mutual will, or as to any specific provisions agreed upon in such will.

It is true we have said the existence of a contract to make a joint will may be inferred where it is shown a will was jointly executed by the parties, involving their joint interests. In re Estate of Johnson, supra, 233 Iowa 782, 787, 10 N.W.2d 664, 667, 148 A. L. R. 748, 754; Johansen v. Davenport Bk. & Tr. Co., 242 Iowa 172, 176, 46 N.W.2d 48, 51; Hale v. Iowa-Des

Moines Nat. Bk. & Tr. Co., supra, 243 Iowa 303, 310, 51 N.W.2d 421, 425; Jennings v. McKeen, supra, 245 Iowa 1206, 65 N.W.2d 207. But according to the great weight of authority, there must be other substantial evidence of the contract between the testators, to make it mutual or reciprocal. In re Estate of Lenders, supra, 247 Iowa 1205, 1214, 78 N.W.2d 536, 538; Annotation, 169 A. L. R. 74, 75; 57 Am. Jur., Wills, section 730, page 496.

As the property was held jointly with right of survivorship, the survivor would take full and complete title unencumbered unless he agreed otherwise. Under the former will he received all the property left by Fred. By consenting to reward Henry Wendland from these funds, we cannot infer that Albert agreed to any other disposition of this property or to renounce his absolute ownership and control of the remainder. The appellants have, therefore, failed in their burden of proving the terms of such an agreement by clear and satisfactory evidence. Proof of what was not done is insufficient. In fact, we think there is a strong inference that unless some clear and satisfactory evidence is produced that such terms were considered, they were not included in the prior contractual arrangement.

We conclude there is insufficient evidence to justify an inference which could be the basis here of an agreement binding upon the surviving joint owner not to dispose of his property except as the law provides for intestate property, and the trial court's judgment and decree herein must be affirmed.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.