In the Matter of the ESTATE OF Rudolph J. HOFFMAN, Deceased.

Charlene EVANS, Edwin J. Hoffman, Joan Reitz, Marietta O'Connor, Alice Maher, and Rose Kanealy, Plaintiffs,

and

Edith Riesselman and Irene Baumhover, Appellants,

v.

Wilfred J. HOFFMAN, Loren J. Hoffman, and Richard Crandall as Executor of the Estate of Rudolph J. Hoffman, Deceased, Appellees.

No. 83–1636.

Supreme Court of Iowa.

Oct. 16, 1985.

Rehearing Denied Nov. 14, 1985.

Dennis L. Eaton, Des Moines, for appellants.

Edith Riesselman and Irene Baumhover, pro se.

John A. Beltz and Raymond O. Snook, Glidden, for appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

UHLENHOPP, Justice.

The question in this appeal relates to the extent the latest testamentary document of testator Rudolph J. Hoffman revoked his prior testamentary documents.

Testator was a farmer in southwest Iowa. He and his wife had ten children. His wife predeceased him. Apparently she owned a house in Carroll and a farm, in which she devised to him a life estate. Testator himself owned another farm, where he lived with his unmarried son, Loren. Before her death, testator's wife requested that testator be sure Loren was taken care of.

Loren and his brother Wilfred leased the farmland from their father. Problems existed in getting rental payments from them. Apparently this caused friction among the siblings, and a conservatorship was established for testator. After the conservatorship was established the rental problems with Loren continued.

On October 9, 1981, testator's daughter Rose Kanealy traveled from Cedar Rapids to visit her father. Upon her arrival she found him to be unkempt, malnourished, and in need of medical attention for a gangrenous foot.

Rose testified that during their conversation after her arrival, her father expressed concern because his attorney at the time had him sign some papers concerning his will and he was unaware of their contents. Testator then dictated a statement which Rose wrote on a piece of seed corn notepaper:

I, Rose Kanealy writing for my Dad dated 10-9-81.

Ma's estate can be sold immediately upon my death.

My farm is not to be sold until 5 years after my death—everything is to be split equally among all my 10 children.

He then wrote "I agree to this" at the bottom and signed his name. Rose kept the paper.

The next day Rose returned to Cedar Rapids with her father in order to take care of him. His foot infection got worse. He was admitted to a hospital on October 17, and was advised that his leg would have to be amputated. Surgery was scheduled for October 22.

Rose talked to her sister Marietta concerning their father's will. Marietta told

Rose that the note she had written for her father would have to be "witnessed" to be valid. Rose then went to her father and asked whether the note expressed his wishes. He said it did. She then arranged for John M. Titler, an attorney, to meet with testator before the surgery.

Titler arrived at the hospital and talked with testator, who told Titler that he had a will which provided for equal distribution of everything among his ten children. He was worried that he had signed some documents that might have changed that.

After this discussion, Titler went to his office and drafted a document entitled "Codicil." This instrument stated that a will executed in 1969 following the death of testator's wife provided for equal distribution among the ten children. That will was incorporated into the Titler codicil by reference as a precaution in case testator had since executed contrary documents.

Titler returned to the hospital and read the proposed codicil to testator, but testator refused to execute it. He said, "I already signed a paper," and indicated he was satisfied that the note written by Rose expressed his intention. Titler testified that testator's reluctance appeared to involve his distrust of lawyers and his belief that the document Titler drafted was more complicated than necessary.

Satisfied that the note was the best expression of Hoffman's intent, Titler explained that testator needed to sign the note again. Testator did so, and Titler and his secretary signed as witnesses on the reverse side of the paper.

No testamentary documents were executed by testator thereafter. He survived surgery, and lived with Rose and her family while recuperating. He visited his farm three times before his death in May 1982.

Testator's will of 1969, a first codicil executed in 1974, and second and third codicils executed in 1978 were admitted to probate. Seven of testator's children not including Rose brought suit, however, alleging that the document executed by testator in 1981 (hereinafter the 1981 doc-

ument) was testator's last will. They sued testator's sons Wilfred and Loren, as well as the co-executor and co-trustee named in the third codicil. These defendants alleged the 1981 document was invalid, but during the course of trial they conceded its validity. The remaining issue before the district court was the legal effect of the 1981 document on the 1969 will and the three codicils.

Testator's will executed in 1969 devised (1) $500 to a church for masses, (2) all personal property to testator's eldest son Edwin to be divided by him among testator's children and grandchildren at Edwin's discretion, and (3) the remainder of the estate, including real property, to the Rudolph J. Hoffman trust, with Edwin as trustee. It also named Edwin executor. Edwin as trustee was given discretion to distribute the trust income in equal shares to testator's ten children during the life of the trust; income not so distributed was to be accumulated and added to principal. The trust was to terminate five years after March 1st next following testator's death. Edwin was meantime specifically prohibited from selling any real estate owned by testator at his death. Upon termination of the trust Edwin was to sell the real estate and make distribution to testator's ten children "per stirpes, share and share alike."

The codicil executed in 1974 modified the bequest of all personal property to Edwin to the extent that testator made a bequest of $2,000 to testator's grandson Gerald O'Conner and a bequest to Loren of the household goods, furnishings, and appliances located at the farm formerly owned by testator's wife. The codicil also stated that testator's farm was to be leased to Loren during the life of the trust, and directed a crop share lease.

The codicil executed in January 1978 modified the first codicil by stating that (1) the lease to Loren would be for five crop years, (2) in the event Loren died or did not desire to lease the farm, Edwin would sell the real estate, and (3) if Loren was living at the expiration of the lease he would have an option to purchase part of the farm for

$300 per acre. The option was exercisable within one year of testator's death by mailing notice to Edwin by certified mail.

The codicil executed in December 1978 revoked the clause in the will executed in 1969 requiring the trustee to distribute trust income and principal "per stirpes, share and share alike" among testator's ten children. It required distribution in ten equal shares but replaced five of testator's children with their children. It also designated two trustees in addition to Edwin, and a co-executor with him.

In district court plaintiffs claimed that the 1981 document completely revoked the 1969 will and three codicils by implication. Defendants contended the 1981 document revoked only the portion of the third codicil that bypassed five children in favor of their children, and left intact the second and third codicils allowing Loren to lease the farm for the five-year period and granting him an option to purchase part of the farm for $300 per acre.

The district court held the 1981 document revoked prior bequests inconsistent with the intention to divide the testator's property equally among his ten children, but did not revoke the lease and option clauses in Loren's favor. The lease provision was not held to be inconsistent because the 1981 document did not specify what was to happen to the farm during the five-year period in which the farm was not to be sold. In addition, the district court held that Loren's option to purchase was not inconsistent with the 1981 document despite the low option price, citing *Matter of Hansen*, 264 N.W.2d 746 (Iowa 1978), and *In Re Estate of Roberts*, 171 N.W.2d 269 (Iowa 1969).

Two plaintiffs appealed. The Court of Appeals reversed. It held the 1981 document fully disposed of testator's property and therefore revoked the original will and codicils. That holding was based on *Porter v. Tracey*, 179 Iowa 1295, 162 N.W. 800 (1917).

In *Porter* this court held a codicil directing that property of testator was not to be sold until five years after testator's death was effective for all its expressed purposes immediately on the death of testator despite the failure to provide for a trustee. *Id.* at 1303, 162 N.W. at 803. Title passed at once to the beneficiaries. *Id.* The Court of Appeals in this case held that the five-year gap before distribution in the 1981 document qualified the beneficiaries' right to alienation but did not constitute a failure to dispose of all the property.

We granted further review, and confront the problem of the effect of the 1981 document on the prior testamentary instruments.

■ I. Section 633.284 of the Iowa Code provides that a will can be revoked in whole or in part by the execution of a subsequent will. To determine whether a subsequent will revokes a former will we look to the intention of the testator as gathered from his acts and from the four corners of the later will. *In Re Estate of Ramthun*, 249 Iowa 790, 795–96, 89 N.W.2d 337, 340 (Iowa 1958).

■ The 1981 document contains no express revocation. The question then is what the testator intended by that document. The general rule is that if the subsequent document does not expressly revoke the former one, it will be held to revoke only the inconsistent portions of the prior document. *Id.* To the extent the testamentary documents or clauses therein are consistent they are read together and given effect. *Id.*

■ II. In this case the clauses in the first and second codicils pertaining to the crop share lease granted to Loren are not inconsistent with the 1981 document. We agree with the trial court that because the 1981 document did not indicate what was to happen with the farm during the five-year period, the lease clause remains operative and must be given effect.

III. We next determine whether the option granted to Loren in the third codicil survived as consistent with testator's 1981 document. The statement in the latter document, "My farm is not to be sold until 5 years after my death—everything is to be

split equally among my ten children", is not facially ambiguous. The problem is that in light of testator's former will and codicils, the 1981 document is unclear as to whether testator intended only to reinstate his children who were bypassed in the third codicil or whether he meant to revoke all prior clauses including those that had the effect of giving Loren preferential treatment over the others.

In determining a testator's intent we look to the facts and circumstances surrounding the making of the will and the language of the instrument. *In Re Estate of Spencer*, 232 N.W.2d 491, 495 (Iowa 1975). The facts and circumstances here, however, lend some support to two interpretations.

On the one hand, the testimony of Titler and Rose as to the circumstances surrounding the making of the 1981 document tends to indicate testator's intention was that his property be split with complete equality as in the 1969 will. Titler and Rose testified testator was concerned that he had signed some papers that changed his will, and therefore wanted to be sure his intention to divide the property equally was known. The record also contains evidence that just prior to the writing of the 1981 document, testator, while living with his son Loren, was not well taken care of, and had problems collecting rent from Loren.

On the other hand, evidence was introduced that testator was concerned about Loren's welfare, and was mindful of his wife's wish that he make sure Loren was taken care of.

This court has held that a grant of an option to one son to purchase certain real estate at below market price is not inconsistent with a bequest of all the assets to all testator's children in equal shares. *Matter of Estate of Hansen*, 264 N.W.2d 746, 748 (Iowa 1978); *In Re Estate of Roberts*, 171 N.W.2d 269, 274 (Iowa 1969). We find no definitive expression of testator's intent in this case that requires a different conclusion. The general principle thus applies which is found in the case of *In Re Estate of Ramthun*, 249 Iowa 790, 796, 89 N.W.2d 337, 340 (1958):

It is the general rule in Iowa that a subsequent will, not in terms revoking the former will, operates as a revocation of the first only insofar as it indicates a different intention as to the disposition of the same property. We have consistently held that all such wills not inconsistent with each other must be construed together, and all their provisions so far as possible shall be carried into effect.

We thus agree with the trial court's holding that the option granted Loren in the second codicil is also consistent with the 1981 document and must be given effect.

We uphold the judgment of the trial court.

DECISION OF COURT OF APPEALS VACATED.

JUDGMENT OF DISTRICT COURT AFFIRMED.